Glenn C. ELLIS, Jr., Appellant,

v.

SOUTHEAST CONSTRUCTION CO., Inc., Hempstead County, Arkansas, and Miller B. Bland, Appellees.

No. 15993.

United States Court of Appeals Eighth Circuit.

Oct. 21, 1958.

Boyd Tackett, Texarkana, Ark. (Ben Shaver and Paul Jones, Texarkana, Ark., on the brief), for appellant.

Winslow Drummond, II, Little Rock, Ark. (Alston Jennings, Robert Shults, Little Rock, Ark., and Royce Weisenberger, Hope, Ark., on the brief), for appellees.

Before GARDNER, Chief Judge, and VOGEL and MATTHES, Circuit Judges.

MATTHES, Circuit Judge.

In this action for damages the question is whether plaintiff was a resident of Louisiana, as he contends, or of Arkansas, as urged by defendants. The trial court found no diversity of citizenship and dismissed plaintiff's complaint. See Ellis v. Southeast Construction Company, D.C., 158 F.Supp. 798.

From the opinion of the trial court, it is readily apparent to us that plaintiff's status (member of the United States Air Force) was the factor which compelled the court's decision. While we are aware that the trial court's findings of fact and conclusions of law are entitled to great weight, and are not to be lightly set aside, Rule 52, Federal Rules of Civil Procedure, 28 U.S.C.A., nevertheless, we are of the opinion that the undisputed facts do not support the court's legal conclusion—that the holding of the trial court is clearly erroneous—and that the order appealed from must be reversed.

The legal principles which control in determining citizenship within the meaning of the diversity statute, Title 28 U.S.C.A. § 1332, are firmly established and generally recognized. As announced by the trial court, Ellis v. Southeast Construction Co., supra, at page 801, "For purposes of federal jurisdiction, 'domicile' and 'citizenship' are synonymous terms (citing authorities), (and) [a] person can have only one domicile at a time, and a domicile once obtained persists until a new one is acquired" (citing cases). Generally speaking, in order "[to] acquire a domicil of choice, the law *requires the physical presence of a person at the place of the domicil claimed, coupled with the intention of making it his present home.* When these two facts concur, the change in domicil is instantaneous. Intention to live permanently at the claimed domicil is not required. If a person capable of making his choice honestly regards a place as his present home, the motive prompting him is immaterial. Restatement of Conflict of Laws, §§ 15, 22." (Emphasis supplied.) Spurgeon v. Mission State Bank, 8 Cir., 151 F.2d 702, 705–706, certiorari denied 327 U.S. 782, 66 S.Ct. 682, 90 L.Ed. 1009. See also Maple Island Farm v. Bitterling, 8 Cir., 196 F.2d 55, 58, certiorari denied 344 U. S. 832, 73 S.Ct. 40, 97 L.Ed. 648; Gallagher v. Philadelphia Transp. Co., 3 Cir., 185 F.2d 543; Stine v. Moore, 5 Cir., 213 F.2d 446; 28 C.J.S. Domicile §§ 9 and 11; 17 Am.Jur.Domicil § 25; Restatement, Conflict of Laws, §§ 15, 16, 18.

Although it reasonably and logically follows that the residence of a member of the Armed Forces generally remains unchanged, domicile being neither gained nor lost by being temporarily stationed in the line of duty at a particular place, there is sound authority for the proposition that a new domicile

may be acquired if fact and intent concur. 28 C.J.S. Domicile § 12g. In 17A Am.Jur.Domicil § 40, the rule is thus stated: "It has been pointed out, however, that during a long period of military service one may not be viewed as occupying, in a residential sense, 'no man's land.' The fact that one is on military duty does not preclude him from establishing his residence where he is stationed if the circumstances show an intent on his part to abandon his original domicil and adopt the new one. * * * On the other hand, if a person engaged in military service by animus and factum establishes a residence near but outside the military post, with the purpose of making such residence the home of himself and his wife, he may acquire a domicil in such place." See also Restatement, Conflict of Laws § 21c; and Seegers v. Strzempek, D.C.E.D.Mich., 149 F. Supp. 35, at page 36, where the court stated: "A citizen of a state does not change his citizenship by entering military service even though he is assigned to duties in another state or country, and regardless of the term of service, unless he indicates an intent to abandon such original domicile and adopt a new one." (Citing cases.) And compare Mangene v. Diamond, 3 Cir., 229 F.2d 554.

With the foregoing controlling principles in mind, we attend to the facts, concerning which there is no dispute.

Plaintiff, thirty-eight years of age at the time of the hearing, and stationed at Barksdale Field, Shreveport, Louisiana, was born and reared in Saratoga, Arkansas. He enlisted as a young man in the United States Air Force in 1939, and has served continuously since that time as a member of that branch of the service. Plaintiff and Miss Jimmie Moss, an Arkansas girl, were married on May 11, 1941, and three children have been born of the marriage, a son 12, a daughter 7, and another daughter, who was two weeks old at trial time. During his military career, plaintiff has been stationed at various places in the United States. Plaintiff stated that the last time he de-

clared Arkansas to be his home was when he re-enlisted in 1945. For a period of seven years immediately prior to the Korean conflict, plaintiff and his family lived at Tampa, Florida, and while stationed there he re-enlisted two times, and on each occasion declared Tampa as his home. Plaintiff was stationed at Rapid City, South Dakota, from January, 1953, to July, 1955, and at Salina, Kansas, from July, 1955, to March, 1956. Since March 28, 1956, plaintiff and his family have resided in Louisiana, first in the Air Line Apartments in Bossier City, where they remained until August, 1957, when plaintiff and his wife purchased the home where they now reside at 929 Camille Drive, Shreveport, Louisiana, for the consideration of $15,500, $800 of which, together with closing costs of $1,300, was paid in cash, the balance by note secured by mortgage. The deed recites that purchasers are residents of Caddo Parish, Louisiana.

It further appears that on April 26, 1958, plaintiff would complete 19 years of continuous service in the Air Force and that he intended to retire upon completion of twenty years of service. He testified that upon retiring, he planned to enter civilian aviation; that he had expended between five and seven thousand dollars of his funds and several thousand hours of study in preparing himself for eleven different aeronautical ratings; that he has a commercial pilot's license, an A & E ground instructor's license, an A & E mechanic's license and a flight instructor's license; that he proposes to secure a job with Civilian Airport in Shreveport.

The testimony of plaintiff also reveals that he is stationed at Barksdale Field, by choice, and as the result of considerable effort on his part to be transferred to that point. That since 1941 he had, on occasions, corresponded with the United States Senators of Arkansas and one Congressman, seeking to bring about his transfer, which, as observed, materialized in March, 1956. His reason for choosing this particular area appears from this statement:

"I wanted to be at Shreveport because I felt it would be an ideal place for myself and my family to make a permanent home, and because of my wife's father's physical condition it would be of great mental relief to him and to her for us to be stationed near enough for them to be together occasionally."

Both plaintiff and his wife testified without equivocation that since March, 1956, they had considered Louisiana as their home, and intended to remain in Shreveport. On this score, plaintiff stated: "I have considered Shreveport my home since March, 1956. I do not intend to claim any other place as my home. I made a decision in December, 1945, that I would never again declare Arkansas my home. * * * When I said I intended to remain in Shreveport I meant that I believe that a man with a family has got to make some tentative permanent plans, so all factors considered, prior to coming to Shreveport, after studying Shreveport's advances, the Barksdale Field there, the progress of the city and the State of Louisiana, I felt that Shreveport gave me the highest possible chances of *getting a permanent home and a permanent residence for the rest of my life and for my family.*" And Mrs. Ellis testified: "I do not consider any other place as my home. * * * If my husband were ordered away from Shreveport, I would not go with him. Never again, no, sir. For the past eleven years, we have made plans for what he would do on his retirement—by his studying and my helping him."

As to plaintiff's ties and connections with Arkansas. He owns an interest in the real estate in Hempstead County, Arkansas, involved in this action, and he and his brother secured a loan to make repairs; his father and grandmother live in the old home at Saratoga, Arkansas, and plaintiff visits them "fairly often." His wife also has relatives in Arkansas. He has not paid a poll tax in either Arkansas or Louisiana and has not voted in either state.

Defendants offered no evidence, and on the foregoing uncontroverted facts, the Court ruled that plaintiff was a citizen of the state of Arkansas so as to divest the Court of jurisdiction to entertain this action.

■ While the proof established, as found by the trial court, that the home in Louisiana where plaintiff and his family are now residing, was purchased subsequent to the commencement of this action, that factor does not destroy plaintiff's contention, especially in view of his positive and unequivocal testimony that when he moved to Louisiana, which was before the suit was filed, he took up his residence there with the fixed intention of making that state his home. Thus both essential elements, the physical presence and animus then and there came into existence.

The ownership by plaintiff of land in the state of Arkansas, and the residence of his close relatives in that state are not entitled, in our opinion, to the significance attached thereto by the trial court, as demonstrated in its opinion. These elements do not overcome the uncontradicted testimony of plaintiff that he abandoned Arkansas as his residence in 1945, an assertion entirely consistent with plaintiff's conduct since that time.

The trial court also indicated that it found plaintiff's testimony to be "seriously impeached," as to his intentions regarding retirement from military service. At trial, plaintiff testified that he had made plans some two and one-half years ago for retirement at the end of twenty years' service, while his testimony, taken in discovery deposition in September, 1957, indicated he stated then that he had no fixed intention one way or another as to retiring after twenty years' service. To our mind, the question of when or whether plaintiff intended to retire from military service has no probative value in determining whether he has relinquished his domicile of birth and acquired a new domicile by choice, and any minor discrepancy as to such side issue was insufficient to stamp plaintiff's uncontroverted declarations of in-

284

tent as "seriously impeached" and of no probative force.

On this record, the only permissible conclusion is that plaintiff, by choice, became a citizen of the state of Louisiana when he and his family took up their residence there in March, 1956. Indeed, if the facts and circumstances presented are insufficient to justify this finding, it would be well nigh impossible for a member of the Armed Forces to ever successfully establish that he had abandoned his original domicile and acquired a new one.

Since diversity of citizenship existed, the Court possesses jurisdiction of this cause; accordingly, the order dismissing plaintiff's complaint is reversed and the action remanded for further proceedings.