Bernard S. COHEN, Plaintiff,

v.

COMMODITY CREDIT CORPORATION, a Corporation, Defendant.

Civ. A. No. 1456.

United States District Court
W. D. Arkansas,
Fort Smith Division.
May 7, 1959.

Hardin, Barton, Hardin & Garner, Ft. Smith, Ark., for plaintiffs.

Charles W. Atkinson, U. S. Atty., Ft. Smith, Ark., for defendant.

JOHN E. MILLER, Chief Judge.

There is before the court defendant's original motion to dismiss and amendment thereto for lack of jurisdiction on the ground that service of process herein was insufficient to comply with Rule 4(d) (3), (d) (5) and (f), F.R.Civ.P., 28 U.S. C.A. The amendment to the motion was filed before the court had ruled upon the original motion to dismiss, and in the amendment to the motion it was alleged that the court lacked jurisdiction upon the further ground that the plaintiff was not on the day of filing the complaint, a resident of the Western District of Arkansas and not then engaged in business in that District.

The plaintiff filed his complaint herein on October 12, 1958, against the defendant, Commodity Credit Corporation. He alleged, in general, that he had submitted a bid to the defendant for the purchase of certain cotton and that on March 27, 1957, his bid was accepted, thus creating a valid and binding contract between the parties; but that thereafter, when the time for performance arrived, the de-

fendant refused to deliver the cotton or honor the contract. He alleged that by reason of the breach he was damaged in the sum of $5,136,200 and prayed judgment in that amount. The detailed allegations are not germane to the issues now before the court.

Upon filing the complaint process was issued against and thereafter served upon the United States Attorney for the Western District of Arkansas, the Attorney General, and the Deputy General Counsel for the United States Department of Agriculture at Washington, D. C.

On April 8, 1959, the plaintiff obtained proper service of process upon Mr. Clyde P. Lieblong in Little Rock, Arkansas. Mr. Lieblong is the designated agent for service of process in Arkansas in actions against the Commodity Credit Corporation.

No question has been raised by the defendant as to the present sufficiency of the service of process. The only question now before the court is whether the venue is properly laid or whether jurisdictional requirements based upon the plaintiff's residence are met.

Title 15 U.S.C.A. § 714b(c), provides in part:

> "Any suit against the Corporation shall be brought in the District of Columbia, or in the district wherein the plaintiff resides or is engaged in business."

The defendant raises the factual question of whether or not the plaintiff at the time of filing the complaint resided or was doing business in the Western District of Arkansas. Before that question is reached, however, a preliminary question is raised by the parties on the issue of whether the statutory provision is jurisdictional or relates merely to venue. The defendant asserts that it is jurisdictional and that the failure of the plaintiff to plead jurisdictional facts, i.e., that he resided in the district, renders his complaint subject to dismissal. The plaintiff asserts that the statute relates to venue only and that, accordingly, as he is not obligated to plead venue, his com-

plaint is good. He further argues that since the statute is one of venue only, the defendant has the burden of showing that venue is improper.

The parties treat the issue as significant and for that reason, although it is not necessarily dispositive, it is dealt with here.

■ The defendant, relying upon the governmental immunity which cloaks Commodity, asserts, properly, that statutory restrictions placed upon suits against the government or any agency thereof are jurisdictional, since the government may be sued only to the extent to which it so consents. This issue appears to be settled. In United States v. Sherwood, 1941, 312 U.S. 584, at page 586, 61 S.Ct. 767, at page 769, 85 L.Ed. 1058, the court said:

> "The United States, as sovereign, is immune from suit, save as it consents to be sued [citing cases], and the terms of its consent to be sued in any court define that Court's jurisdiction to entertain the suit."

Furthermore, "limitations and conditions upon which the Government consents to be sued must be strictly observed and exceptions thereto are not to be implied." Soriano v. United States, 1957, 352 U.S. 270, 276, 77 S.Ct. 269, 273, 1 L.Ed.2d 306.

Confronted with such a rule the court would have to hold the statute jurisdictional where it prescribes conditions to suit without specifying whether such conditions were of a jurisdictional nature or were merely provisions for venue. That result would be compelled here except for a clear statement of Congressional intent found in the Report of the Subcommittee of the Committee on Agriculture and Forestry analyzing the provision in question. The Committee said:

> "The *venue* of suits against the Corporation is established in the District of Columbia, or in the district in which the plaintiff resides or is engaged in business." (Emphasis added.)

2 U.S.Code Cong.Ser. 2138, at 2148 (1948). It is apparent from this comment on subsection (c) quoted above that Congress regarded this provision as fixing venue only.

■ In referring to "venue" Congress necessarily referred to a rule for fixing a forum which can be waived and which is not jurisdictional, since these are characteristics of venue. In other words, the Congress saw fit to place Commodity in the same position as a private litigant so far as the issue might involve a choice of forum. It might be noted that such a provision might work to the benefit of Commodity as well as to a claimant against it, since improper venue might be intentionally waived by Commodity as desirable under certain circumstances. In any event, it is clear that Congress in providing for a forum for suits against the defendant was not placing conditions upon jurisdiction but was merely fixing venue.

■ Thus it devolves upon the defendant to plead and prove the "personal defense" of improper venue, and the failure of the plaintiff to allege facts supporting venue is not fatal to his complaint.

In this manner the issue of fact is reached. The government asserts that the plaintiff was not, at the time his complaint was filed, either residing or engaging in business in Arkansas as required under the statute as a prerequisite to proper venue.

Local Rule 8 provides for the hearing of motions upon the briefs of the parties, together with such supporting documentary material as they might wish to file to the extent permitted by the Federal Rules. The rule further provides that a request for oral argument or presentation of oral testimony may be made. The factual question upon the present motion is presented by the deposition of the plaintiff taken pursuant to notice that it might be used in evidence, and also by an affidavit of one Curtis W. Ragsdale, Special Agent of the Department of Agriculture, and argued in the briefs of

the parties. No request for presentation of ore tenus testimony has been made by either party and the factual issues, so far as they require determination, must be determined from the deposition. The court does not consider the affidavit of Ragsdale because it indicates only that certain information was "obtained by myself and other personnel", most of which appears to be hearsay and, as the plaintiff asserts in his brief, highly indefinite as to many particulars.

The defendant first contends that the plaintiff was not residing in Arkansas at the time the complaint was filed, and asserts that by the term "resides" the statute contemplates domicile rather than mere physical presence. The plaintiff does not dispute this contention, but instead bases his argument upon the proposition that he was at the time the complaint was filed domiciled in Arkansas.

■ The legal concept of domicile involves the requirement of "physical presence of a person at the place of domicil claimed, coupled with the intention of making it his present home." Ellis v. Southeast Construction Co., 8 Cir., 1958, 260 F.2d 280, 281. The first requirement is met by physical presence, and without question the plaintiff was physically present in Arkansas for several months during 1958 in the course of which this complaint was filed. The question is whether the requisite intent was present.

In the first part of 1957 the plaintiff was residing at Richardson, Texas, a suburb of Dallas where he was conducting a business known as the Dal-Tex Cotton Traders. It was while he was operating this business that he entered into the alleged contract with the defendant. Late in 1957 he moved to Houston, Texas, and purchased a home at 4002 McDermont Street in that city. In August 1958 he "moved" to Fort Smith, Arkansas, with the intention of engaging in a business with the Educational Book Club, from which organization he had obtained a "Franchise" in June of 1958. He was

already operating in this business in Houston, but wanted to "expand my business in Arkansas, Fort Smith, specifically, and Eastern Oklahoma looked like fertile territory."

After coming to Fort Smith in August of 1958, he rented a house from which he operated first the Book Club business and then another. He did not bring his wife or child with him, and they continued to live in Houston, where he owned a home, although he was not separated from his wife. In November or December 1958 he gave up his house in Fort Smith and left the District. Since then he has neither rented nor purchased any property in Arkansas. He states that he remains a resident of Fort Smith by virtue of staying at the Carlton Hotel "a few days at a time." Altogether he has been at the Carlton Hotel since leaving Fort Smith approximately two weeks. He has acquired no property in Arkansas. His car was registered in Houston, Texas, and as stated, he owns a home there, which he gives as his "present address." He knows of no relatives in Arkansas except his "grandfather's nephew" at Hot Springs.

It is possible, of course, to acquire domicile without a single outward act to manifest the required intent. However, there is usually some such manifestation, and when there is not, the self-serving statements of subjective intent must be carefully scrutinized. Assuming that the defendant has the burden of proving that *no* domicile existed, the court believes that burden to have been sustained. The plaintiff's present activities and intent do not necessarily show any lack of intent when he first "moved" to Fort Smith, but they are of some evidentiary value, particularly inasmuch as he claims to be still domiciled in Arkansas. He is presently engaged in business for himself in Houston, Texas. He has no relatives nor business in Fort Smith though he still "holds" a franchise from the Educational Book Club.

More significant, of course, are his activities immediately after "moving" to Fort Smith. Although he contends that he intended to make it his home indefinitely, and rented a house, he did not bring his family with him. He stated that he was not separated from his wife. He stayed in Fort Smith from sometime in August 1958 to November or December 1958. Even though the defendant may have the burden of proof, when these facts are considered, the court feels that some explanation of this extraordinary situation is in order. No explanation was made. His business in Arkansas, furthermore, was, in his own words, to be an *expansion* of the business with the Book Club he was already doing in Texas.

It is unnecessary to add to the long train of convincing facts. The court concludes that the defendant has shown the plaintiff was not domiciled in Arkansis at the time the complaint was filed. Accordingly it is not necessary to determine whether the defendant or the plaintiff must sustain this burden.

Nevertheless, the governing statute provides for venue not only where the plaintiff "resides" but also where he is "engaged in business." The plaintiff contends that he was without dispute engaged in business in Arkansas at the time the complaint was filed. The defendant contends that the business was wholly unrelated to the business which is involved in this action, and that venue is not conferred by the fact that the plaintiff may have been engaged in a completely unrelated business in the Western District at the time the suit was filed, October 13, 1958.

The statute does not specify the type of business in which the plaintiff must be engaged in any District in order to fix venue. Neither does it specifically require that the business be that which gave rise to the suit.

In this instance the plaintiff's cause of action, if any, grew out of a business in Dallas, Texas, operating under the name of Dal-Tex Cotton Traders and a bid to purchase cotton from defendant made by the plaintiff doing business un-

der that name. Admittedly the Educational Book Club business operated in Fort Smith, if it was so operated, was in no way connected with this action or the business which gave rise to it. Thus the question before the court at this juncture is whether venue may be laid wherever any plaintiff may do any kind of business, or whether venue is improper unless such business is with or concerns the defendant, or is related to the matter giving rise to the action.

At the outset it must be remembered that it is the plaintiff's place of business which determines the venue, not the defendant's. Such a situation is therefore unlike that in which venue is laid where the *defendant* is doing business.

It appears that no cases have been decided reaching this exact point. The statute itself is not clearly determinative, although the plaintiff argues that in fixing venue where the plaintiff engages in business, the statute leaves it to the plaintiff to engage in any business whatever in any District and thus fix venue by the dictates of his personal choice.

In these circumstances it may be helpful to consider the nature and purpose of a venue statute. The purpose of such a statute, of course, is to restrict the plaintiff's choice of a forum. Usually such restrictions are designed to limit the forum to locations which will furnish a reasonably convenient place of hearing for both parties, considering the probable location of witnesses and records, costs of transportation and similar issues. These issues, in fact, have been long recognized as so significant that at common law the doctrine of forum non conveniens was evolved to meet them in a practical encounter which would eliminate an inconvenient venue even though it was technically available, and the same doctrine in essence has been made statutory in federal law. Title 28 U.S.C.A. § 1404.

The Congress has not been unaware of these considerations. The "forum non conveniens" statute, supra, was passed in part to deal with them. Beyond that, the Subcommittee reporting on the Commodity Credit Corporation Charter Act of 1948 took note of the same problems in fixing the statute of limitations. The Subcommittee said:

"It is felt with respect to the Corporation that allowance of a greater length of time than 2 years is not required where a bona fide claim exists, and would present unnecessary difficulties in the way of obtaining witnesses and records on behalf of the Corporation."

2 U.S.Code Congressional Service 1948, p. 2148. Thus the Congress with respect to the very act before the court for construction indicated a deep awareness of the problems involved in producing witnesses and records. That the Committee commented specifically upon this problem with respect to the limitation period does not detract from its awareness of the general problem in fixing venue.

In any event, it is obvious that if a venue statute has any purpose at all it is, for whatever reasons, in some way to take from a plaintiff the right to absolute and uncontrolled forum shopping. If he is to be allowed to dictate without limitation any place he might choose for trial, there would be no need for venue provisions.

If the plaintiff's argument is accepted that *any* business in any District, whether either the District or the business were related to the issues in the case, is sufficient to fix venue, the venue requirements of Sec. 714b(c) are virtually demolished. They cease to be any restriction, and become a franchise to the plaintiff for absolute dictation of the place of trial. This case itself is an example, but by no means the worst. If the plaintiff's contention is accepted, he would be allowed to spend a day in any District in the nation, presumably including one in Alaska or Hawaii, and by virtue of a few sales of books or magazines, or similar articles, would be doing business and could establish venue. He would, in short, have a free rein in choosing his venue.

The antipathy of both the federal courts and the Congress to forum shopping, as well as the requirements of the venue statutes, are strong persuasions that such power was not intended to be vested in plaintiffs against Commodity any more than other plaintiffs. The court finds it impossible to impute to Congress a wholly new and different motive, contradictory to all other phases of judicial practice as regulated by Congress without an express intent shown in the act itself or its legislative history.

■ In providing for venue in any District where the plaintiff "is engaged in business," the Congress intended "business" to mean business with Commodity, or at least the same general kind of business as that which gives rise to the alleged cause of action. The plaintiff would not necessarily be limited to venue where the business with Commodity was transacted, but certainly it was intended that he be limited to a forum where he was engaged in the same general type of business. For example, a cotton broker bidding on Commodity cotton might have offices in Memphis, Dallas, and other cities. Probably he would not be limited to the forum in the District from which he submitted the particular disputed bid. On the other hand, the fact that a cotton buyer deals in cotton in Dallas, sells magazines in Fort Smith and Houston, and sells instruments to manufacturers in still another location does not give him the right to choose any of those unrelated locations in which to bring suit against Commodity.

■ The court concludes, therefore, that the plaintiff was not "engaged in business" in Arkansas as that term is used in the governing venue statute, and further that he did not "reside" in this District at the time the complaint was filed. The venue of the plaintiff's action is therefore improper, and the defendant's motion to dismiss should be sustained and the complaint dismissed.

An order in accordance with the above is being entered today.