OPINION AND ORDER
 

 CASELLAS, District Judge.
 

 Pending before the Court is Co-defendant Puerto Rico Electric Power Authority’s (Defendant) motion to dismiss due to lack of subject matter jurisdiction pursu
 
 *CXCVII
 
 ant to Fed.R.CivJP. 12(b)(1) (Docket # 53). Defendant asserts that there is absence of diversity among the parties and hence the Court lacks jurisdiction to entertain the above captioned claim. Plaintiffs have filed an opposition to said motion (Docket # 57). Defendant requested leave to reply (Docket #58). Said request is hereby DENIED. In addition, Defendant’s renewed motion to dismiss or in the alternative, renewed motion for leave to reply (Docket # 59) is also DENIED. After carefully reviewing the parties’ arguments as well as the applicable law, Defendant’s motion will be DENIED.
 

 The above captioned matter is premised on diversity jurisdiction, 28 U.S.C. § 1332. Plaintiffs, a married couple, assert that, at the time of filing the complaint, they were domiciled in Hawaii, and thus, are diverse from the Defendants, which are domiciled in Puerto Rico. Defendant has challenged Plaintiffs’ alleged Hawaiian domicile and, accordingly, moved for dismissal for lack of diversity. The intricacies in this case rest on the fact that Plaintiff José M. Martinez is an enlisted member of the U.S. Army, and as such, has recently moved from Puerto Rico, to Texas, to Hawaii, to Georgia. This last move, however, is irrelevant for purposes of maintaining diversity as none of the Defendants has alleged a Georgia domicile. It is noteworthy to mention that this is the second case filed by Plaintiffs regarding the same accident. The first was filed in May of 2000 and was voluntarily dismissed by Plaintiffs, conceding that they were not domiciled in Hawaii at the time they filed the complaint.
 

 Standard of Review
 

 In general terms, a defendant may move to dismiss an action for lack of subject matter jurisdiction pursuant to Fed. R.Civ.P. 12(b)(1). In this type of jurisdictional challenge, “the standard applied to a 12(b)(1) motion is similar to the standard applied to a 12(b)(6) motion, namely, the court must take all of plaintiffs allegations as true and must view them, along with all reasonable inferences therefrom, in the light most favorable to plaintiff.”
 
 Pejepscot Indus. Park v. Maine Cent. R.R.,
 
 215 F.3d 195, 197 (1st Cir.2000);
 
 Freiburger v. Emery Air Charter, Inc.,
 
 795 F.Supp. 253, 257 (N.D.Ill.1992).
 
 See also Hart v. Mazur,
 
 903 F.Supp. 277 (D.R.I.1995) (“Motions under Rule 12(b)(1) and Rule 12(b)(6) are subject to the same standard of review.”) However, once the jurisdictional challenge has been raised, the plaintiff carries the burden of demonstrating the existence of the Court’s jurisdiction.
 
 Puerto Rico Tel. v. Telecom. Regulatory Bd.,
 
 189 F.3d 1, 7 (1st Cir.1999).
 

 In assessing whether dismissal is appropriate, “the trial court, must accept as true the well-pleaded factual allegations of the complaint, draw all reasonable inferences therefrom in the plaintiffs favor, and determine whether the complaint, so read, limns facts sufficient to justify recovery on any cognizable theory.”
 
 LaChapelle v. Berkshire Life Ins. Co.,
 
 142 F.3d 507, 508 (1st Cir.1998) (citations omitted). But “[ajlthough this standard is diaphanous, it is not a virtual mirage.”
 
 Berner v. Delahanty,
 
 129 F.3d 20, 25 (1st Cir.1997)
 
 citing Gooley v. Mobil Oil Corp.,
 
 851 F.2d 513, 515 (1st Cir.1988). In order to survive a motion to dismiss, “a complaint must set forth ‘factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory.’ ”
 
 Id.
 
 In judging the sufficiency of a complaint, courts must “differentiate between well-pleaded facts, on the one hand, and ‘bald assertions, unsupportable conclusions, periphrastic circumlocution, and the like,’ on the other hand; the former must be credited, but the latter can safely be ignored.”
 
 LaChapelle,
 
 142 F.3d at 508 (quoting
 
 Aul-
 
 
 *CXCVIII
 

 son v. Blanchard,
 
 83 F.3d 1, 3 (1st Cir.1996)).
 
 See also Rogan v. Menino,
 
 175 F.3d 75, 77 (1st Cir.1999). Courts, moreover, “will not accept a complainant’s unsupported conclusions or interpretations of law.”
 
 Washington Legal Foundation v. Massachusetts Bar Foundation,
 
 993 F.2d 962, 971 (1st Cir.1993).
 

 Applicable Law and Analysis
 

 Federal courts “are not at liberty to overlook limitations on their subject matter,”
 
 Francis v. Goodman,
 
 81 F.3d 5, 8 (1st Cir.1996), but rather are required to strictly construe those statutes which grant their jurisdiction,
 
 Garcia-Perez v. Santaella
 
 208 F.Supp.2d 200, 203 (D.P.R.2002).
 
 See also Alicea-Rivera v. SIMED,
 
 12 F.Supp.2d 243, 245 (D.P.R.1998). In cases in where diversity of citizenship is the sole basis for invoking subject matter jurisdiction, without a preponderance of the evidence establishing diversity, the district court would lack judicial power to adjudicate the controversy.
 
 Francis,
 
 81 F.3d at 6.
 

 In the case at hand, Plaintiffs have invoked the Court’s jurisdiction pursuant to the diversity statute, 28 U.S.C. § 1332. Diversity jurisdiction requires complete diversity between all plaintiffs and all defendants.
 
 See Casas Office Machines v. Mita Copystar America, Inc.,
 
 42 F.3d 668, 673 (1st Cir.1994). Defendant has challenged Plaintiffs’ jurisdictional allegations; accordingly, Plaintiffs bear the burden of proving, by a preponderance of the evidence, the facts supporting jurisdiction.
 
 Bank One v. Montle,
 
 964 F.2d 48, 50 (1st Cir.1992);
 
 O’Toole v. Arlington Trust Co.,
 
 681 F.2d 94, 98 (1st Cir.1982);
 
 Garcia-Perez,
 
 208 F.Supp.2d 200;
 
 Palermo v. Abrams,
 
 62 F.Supp.2d 408, 410 (D.P.R.1999), Casellas, J. ([t]he party invoking subject matter jurisdiction must support its allegation of jurisdiction by “competent proof’).
 

 The First Circuit has counseled district courts to give the parties a hearing and conduct discovery prior to its ruling on the existence of subject matter jurisdiction, or lack thereof.
 
 Bank One,
 
 964 F.2d. at 52
 
 (citing Williamson v. Tucker,
 
 645 F.2d 404, 414 (5th Cir.1981)). However, although a hearing may be appropriate, it is not necessarily required.
 
 Valentin v. Hospital Bella Vista,
 
 254 F.3d 358, 364 (1st Cir.2001). In the instant case, the parties have extensively discussed the jurisdictional issue through their respective motions, they have also conducted discovery regarding the facts related to the alleged diversity of Plaintiffs and they have presented the Court with hard evidence such as depositions and sworn statements. Accordingly, the Court feels that it has been placed in a well informed position regarding the jurisdictional issue and that the holding of a hearing is not warranted since it would be a time consuming process that would add little to the discussion.
 

 “For federal jurisdictional purposes, diversity of citizenship must be established as of the time of suit.”
 
 Valentin,
 
 254 F.3d at 361
 
 (citing Bank One,
 
 964 F.2d at 49). Accordingly, the critical date here is August 27, 2001, the date on which Plaintiffs filed their present complaint. Plaintiffs’ jurisdictional argument hinges on their contention that they were domiciled in Hawaii for diversity purposes when they filed this suit.
 

 Diversity jurisdiction exists when the claims in the complaint are between citizens of different states and when the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs. 28 U.S.C. § 1322(a). It is horn-book law that when federal jurisdiction is based on diversity of citizenship, complete diversity must exist between the adverse parties in the action. That is, the citizen
 
 *CXCIX
 
 ship of each plaintiff must be diverse from that of each defendant.
 
 See Owen Equip. & Erection Co. v. Kroger,
 
 437 U.S. 365, 373-74, 98 S.Ct. 2396, 57 L.Ed.2d 274 (1978);
 
 Newman-Green, Inc. v. Alfonzo-Larrain,
 
 490 U.S. 826, 829, 109 S.Ct. 2218, 104 L.Ed.2d 893 (1989);
 
 Soler v. P.R. Telephone Co.,
 
 230 F.Supp.2d 232, 234 (D.P.R.2002)
 
 (citing Owen Equip,
 
 and
 
 Newmar\r-
 
 Green). Moreover, the existence of diversity jurisdiction must be evident on the face of the complaint in order for a federal court to assume jurisdiction.
 
 Fifty Associates v. Prudential Insurance Co. of America,
 
 446 F.2d 1187 (9th Cir.1970);
 
 Soler,
 
 230 F.Supp.2d at 234.
 

 For purposes of diversity jurisdiction, citizenship is usually equated with domicile.
 
 Valentin,
 
 254 F.3d at 366. This concept, of course, is distinct from that of “residence.” While a party may have more than one residence, he/she can only have one domicile.
 
 Bank One,
 
 964 F.2d at 53;
 
 see also, Hawes v. Club Ecuestre El Comandante,
 
 598 F.2d 698, 701 (1st Cir.1979). Mere residence is insufficient to determine a party’s jurisdictional status.
 
 Palermo,
 
 62 F.Supp.2d at 409.
 

 A person is a citizen of the state in which he is domiciled.
 
 Lundquist v. Precision Valley Aviation, Inc.,
 
 946 F.2d 8, 10 (1st Cir.1991). Domicile generally requires two elements: (1) physical presence in a state, and (2) the intent to remain there indefinitely
 
 (animus
 
 manendi)
 
 Kidd v. Hilton of San Juan, Inc.,
 
 251 F.Supp. 465 (D.P.R.1966).
 
 Valentin,
 
 254 F.3d at 366. A person’s domicile is the “place where he has his true, fixed home and principal establishment, and to which, whenever he is absent, he has the intention of
 
 returning{animus
 
 revertendi).”
 
 Id. (citing Rodriguez-Diaz v. Sierra-Martinez,
 
 853 F.2d 1027, 1029 (1st Cir.1988)).
 

 It is not required that the intention to stay there be permanent, however, there is a firm and well recognized presumption of continuing domicile.
 
 Bank One,
 
 964 F.2d at 50. A plaintiff maintains his domicile until it can be proven, by clear and convincing evidence, that he/she has changed it.
 
 Id., Alicea-Rivera v. Sindicato De Aseguradores,
 
 12 F.Supp.2d 243, 245 (D.P.R.1998),
 
 Palermo,
 
 62 F.Supp.2d at 410. However, it is important to note that “[w]hile one’s statements may supply evidence of the intention requisite to establish domicile at a given place of residence, they cannot supply the fact of residence there... and they are of slight weight when they conflict with the fact.”
 
 State of Texas v. State of Florida,
 
 306 U.S. 398, 425, 59 S.Ct. 563, 83 L.Ed. 817 (1939).
 

 To constitute “domicile,” there must be both the fact of a fixed habitation or abode in a particular place and an intention to remain there permanently or indefinitely (an
 
 imus
 
 manendi).
 
 Owens v. Huntling,
 
 115 F.2d 160 (9th Cir.1940). Residence in fact, coupled with the purpose to make the place of residence one’s home, are the essential elements of domicile.
 
 Penn Mutual Life Ins. Co. v. Fields,
 
 81 F.Supp. 54 (D.C.Cir.1948). Thus, to ascertain a person’s domicile (particularly if there is evidence that a partyis domicile is unclear), the Court must focus on the party’s intent.
 
 Palermo,
 
 62 F.Supp.2d at 410. The analysis calls for a “totality of the evidence” approach, and no single factor is conclusive.
 
 Id.
 
 There are no hard and fast rules for determining who is “domiciled” in a state for purposes of diversity jurisdiction. Some of the factors traditionally considered when determining a party’s domicile are: (1) the person’s place of voting; (2) the location of the person’s real and personal property; (3) the state issuing the person’s driver’s license; (4) the state where the person’s
 
 *CC
 
 bank accounts are maintained; (5) club or church membership; and (6) the person’s place of employment.
 
 Lundquist v. Precision Valley Aviation.,
 
 946 F.2d 8, 10 (1st Cir.1991);
 
 Palermo,
 
 62 F.Supp.2d at 410
 
 (citing Bank One,
 
 964 F.2d at 50). The determination of domicile is a mixed question of law and fact.
 
 Id.
 
 Other factors may also be taken into consideration. As a general rule, no single factor is wholly controlling in determining whether diversity exists rather a court must make such determination on a case by case basis.
 
 Delgado Ortiz v. Irelan,
 
 830 F.Supp. 68, 70 (D.P.R.1993).
 

 The instant case varies, and hence, the analysis we must apply, from the run-of-the-mill diversity case since Plaintiff José Martínez is a serviceman and as such is subject to temporary assignments on which his wife accompanies him. It is important to note that the domicile of a serviceman is not affected by temporary assignments in the course of duty.
 
 Rosado-Marrero v. Hospital San Pablo, Inc.,
 
 927 F.Supp. 576 (D.P.R.1996)
 
 (citing Ellis v. Southeast Constr. Co.,
 
 260 F.2d 280 (8th Cir.1958);
 
 Beers v. North American Van Lines,
 
 836 F.2d 910 (5th Cir.1988)). Moreover, the fact that the family, in this case, Plaintiffs spouse, accompanies him does not affect the presumption of continuing domicile.
 
 See Bowman v. DuBose,
 
 267 F.Supp. 312 (D.S.C.1967). However, this presumption of retention of the domicile prior to enlistment is rebuttable through “clear and unequivocal evidence.”
 
 See, e.g., Rosado-Marrero,
 
 927 F.Supp. at 577 (“The fact that one is on military duty does not preclude him from establishing his residence where he is stationed if the circumstances show an intent on his part to abandon his original domicile and adopt the new one.”)
 
 (citing Ellis,
 
 260 F.2d 280)
 
 (quoting
 
 13B Charles A. Wright, Arthur R. Miller and Edward A. Cooper, Federal Practice and Procedure § 3617 at 567). Therefore, in the case at bar, it is for Plaintiffs to prove that they had “formed the intention to make a home” in Hawaii.
 
 Id.
 

 Since the presumption is that domicile remains the same until proven otherwise by clear and convincing evidence and, inasmuch as Plaintiffs argue that they changed their domicile to Hawaii, the Court will examine whether Plaintiffs changed their domicile to Hawaii on or before August 27, 2001, the date the Complaint was filed. In the case at hand, Plaintiffs have produced evidence that at the time of the filing the complaint: (1) they were registered voters in the State of Hawaii; (2) Plaintiff José Martínez had executed the Department of Defense form 2050, changing his state of domicile from Puerto Rico to Hawaii and thus affecting where he paid his taxes; (3) they were in fact paying their federal and state taxes as residents of the State of Hawaii and not Puerto Rico; (4) they owned a car in Hawaii, which was also registered in Hawaii, and they did not own any vehicles in Puerto Rico; (5) they had leased a house in Hawaii where they lived and paid all the utilities as residents of Hawaii; (6) they did not lease or otherwise possess any property in Puerto Rico nor paid utilities for any property in Puerto Rico; (7) all of their personal property was located in Hawaii; (8) they had relinquished their Puerto Rico driver’s licenses and had obtained Hawaiian driver’s licenses; (9) they had opened a bank account in Hawaii and had none in Puerto Rico; (10) they had requested and obtained a loan from a Hawaiian bank as residents of Hawaii; (11) they had no financial ties to Puerto Rico; (12) Plaintiff José Martínez had petitioned the U.S. Army to extend his orders to remain in Hawaii; (13) they had become members of a church in Hawaii; and (14) they had no plans to return to Puerto Rico (Docket # 57).
 

 
 *CCI
 
 Plaintiffs’ evidence consists of their statements under penalty of perjury and statements made during their deposition (Docket #57, Exhibits I & II). We note that “a party’s own declarations concerning his [or her] domicile, as is true of any self-serving statement, are subject to judicial skepticism. They are awarded little weight when in conflict with the facts.”
 
 Id. (quoting
 
 13B Wright, Miller & Cooper § 3612 at 532). Accordingly, we examine the factual grounds for Defendant’s contention regarding Plaintiffs’ domicile.
 

 On the other hand, Defendant argues that Plaintiffs have already falsely asserted diversity, were not domiciled in Hawaii, and have bought a house and are living in Georgia. Specifically, Defendant points to the following: (1) statements in Plaintiff Solymar Garcia’s deposition indicating that she had no intention to stay in Hawaii; (2) they knew that her husband would at some point get orders to leave Hawaii; (3) Plaintiff Solymar Garcia expects to leave Georgia as she did Hawaii when her husband received new orders from the military; (4) Plaintiffs never purchased a home or other real estate in Hawaii; (5) in January, 2003 they bought a home in Georgia; (6) they lived in base housing in Hawaii; (6) Plaintiff Solymar Garcia voted in the 2000 elections in Puerto Rico and did not vote for the President of the United States in Hawaii; (7) Plaintiff Solymar Garcia did not vote in the Hawaii elections of 2002; (8) Plaintiff Solymar Garcia ignored the names of the two senators from Hawaii, congressmen, or governor of Hawaii and whether the senators and congressmen were Republican or Democrats; (8) Plaintiff Solymar Garcia never executed a will in Hawaii; (9) Plaintiff José Martinez executed a “Power of Attorney” in Texas; (9) Plaintiffs left no furniture or cars behind for their return to Hawaii when they left nor had any friends from Hawaii come visit them in Georgia; and (10) although Plaintiff José Martínez signed the federal form “State of Legal Residence Certifí-cate,” this form does not equate a change in domicile.
 

 On the specific issue of Department of Defense form 2058, this Court has already ruled that its filing alone does not constitute a change in domicile.
 

 However, an examination of the document reveals that its purpose is “for
 

 determining the correct state of legal residence for purposes of withholding income taxes from the military.” The form further forewarns the subscriber that intention of a change of domicile must be followed by the subscriber’s compliance with other criteria such as: (1) registering to vote, (2) purchasing residential property, (3) titling and registering automobiles, (4) notifying the state of the previous domicile of change of domicile, (5) preparing a new last will and testament indicating the new state of legal residence. The form states that “generally, unless these five steps have been taken, it is doubtful that your state of legal residence/domicile has changed.”
 

 Rosado-Marrero,
 
 927 F.Supp. at 577-78.
 

 Regardless of the effects of this form, it is evident that, at the date of filing the complaint, Plaintiffs had severed all ties to Puerto Rico and were domiciled in Hawaii. The fact that they later moved to Georgia because of Mr. Garcia’s reassignment is inapposite. The critical point in time was the date of filing the complaint. The case law is clear on that “jurisdiction, once attached, is not impaired by a party’s later change of domicile.”
 
 Woon Oh v. Ford Motor Co.,
 
 79 F.Supp.2d 1375, 1377 (M.D.Ala.1996)
 
 (quoting Smith v. Sperling,
 
 354 U.S. 91, 93 n. 1, 77 S.Ct. 1112, 1 L.Ed.2d 1205 (1957));
 
 (citing American Foundation, Inc. v. Mountain Lake Corp.,
 
 454 F.2d 200, 202 (5th Cir.1972)) (diversity
 
 *CCII
 
 of citizenship is to be determined according to facts as they existed at time of institution of lawsuit);
 
 Mann v. City of Tucson Dept. of Police,
 
 782 F.2d 790, 794 (9th Cir.1986) (existence of diversity jurisdiction is determined by the citizenship of the parties at the time of the filing of the complaint, not at the time the cause of action arose or after the action is commenced);
 
 Prakash v. American Univ.,
 
 727 F.2d 1174, 1179 n. 28 (D.C.Cir.1984);
 
 Hill v. Rolleri,
 
 615 F.2d 886, 889 (9th Cir.1980).
 

 Even though Plaintiffs knew that they would eventually have to leave Hawaii, the preponderance of the evidence demonstrates a lack of
 
 animus revertendi
 
 toward Puerto Rico. The facts, as testified to by Plaintiffs under oath, as well as the evidence presented, demonstrate that Plaintiffs intended to make Hawaii their home, albeit until the indefinite point in time that Plaintiff José Martínez received other orders. In fact, he had requested that his stay in Hawaii be extended. Although they did not own a home there, their social as well as financial ties lay exclusively in Hawaii. At the time of the filing of the complaint, their car was in and was registered in Hawaii, and although they lacked specific knowledge regarding politics, they were registered to vote in Hawaii. The only factor linking Plaintiffs with Puerto Rico is the fact that Plaintiff Solymar Garcia voted in the 2000 Puerto Rico elections. However, we note that this action was before the instant complaint was filed and that also Plaintiff Solymar Garcia thereafter registered as a Hawaiian voter. In addition, as we established before, there are no hard and fast rules for determining who is “domiciled” in a state for purposes of diversity jurisdiction, therefore, we can not find this fact as controlling in the case at bar. The evidence presented clearly tips the scale towards a Hawaiian domicile. Thus, we conclude that Plaintiffs have proven by a preponderance of the evidence that they were domiciled in Hawaii at the time of filing. Consequently, this Court has subject matter jurisdiction over the case.
 

 Finally, we address a point raised in Defendant’s motion regarding the case of
 
 Rosado-Marrero.
 
 Although the diversity question in
 
 Rosado-Marrero
 
 did turn on the Court’s determination of a Puerto Ri-can serviceman’s domicile, Defendant’s reliance on the case is misplaced as the facts of that case are distinguishable from the case now before us. In
 
 Rosado-Marrero,
 
 unlike the case at hand, the
 
 BankOne
 
 presumption of “continuing domicile” in Puer-to Rico was reinforced by the fact that, at the time of filing the complaint, plaintiffs still had their home of record in Vega Baja, Puerto Rico, maintained a Puerto Rican driver’s license, had their principal direct deposit checking account in Fort Buchanan, Puerto Rico, and Plaintiff Hansel Rosado Cancel was registered to vote in Puerto Rico. Furthermore, the presumption applied to servicemen discussed in
 
 Rosado-Marrero
 
 is not only rebutted in this case, but also, by its own rationale, inapplicable. “The reason for this rule is that it is presumed that a person serving in the military intends to return to his home.”
 
 In re Ski Train Fire in Kaprun, Aus.,
 
 257 F.Supp.2d 717, 726 (S.D.N.Y.2003)
 
 (citing Bowman,
 
 267 F.Supp. at 313). Plaintiff Solymar Garcia expressly stated in her deposition that
 
 she had no intention to return to Puerto Rico.
 
 Moreover, Defendants do not even contend these statements. Accordingly, for the reasons set herein, Defendant’s motion to dismiss is hereby DENIED.
 

 SO ORDERED.