**Forrest L. BOWMAN, Plaintiff,**

v.

**Henry Y. DuBOSE, Jr. and James William Pittman, Defendants.**

**Civ. A. No. 67–46.**

United States District Court
D. South Carolina,
Columbia Division.

April 24, 1967.

Bryan & Bahnmuller, Howard P. King, Sumter, S. C., for plaintiff.

E. W. Laney (Turner, Padget, Graham .& Laney) J. Edwin Belser, Jr., Columbia S. C., for defendants.

DONALD RUSSELL, District Judge.

The defendant, by motion to dismiss, ·challenges the claim of diversity of citizenship as a basis for the Court's jurisdiction herein.

The issue posed by the motion revolves .about the domicile of the plaintiff. If, as the defendant urges, plaintiff's domicile is South Carolina, jurisdiction fails; .should he retain a domicile in West Virginia, diversity exists and the motion must fail.

The undisputed facts establish that in 1942, the plaintiff, then domiciled at Flat Top Yards, West Virginia, enlisted in the United States Army. His post office address was, however, Bishop, Virginia, his home in West Virginia being near the line between the State of Virginia and West Virginia. Save for a two-year interval (1945–7), he remained continuously in the Armed Services at various stations in America and Europe, (his last enlistment in 1947 was in the Air Force), including his final station at Shaw Field, near Sumter, South Carolina, until his retirement April 30, 1966.

■■ It is settled that federal jurisdiction, under the diversity clause, rests on the domicile of the parties at the time of the commencement of the action and not on the place where they may at such time live or dwell temporarily. Miller v. Lee (D.C.S.C.1965), 241 F.Supp. 19, 22. A serviceman, such as the plaintiff was at the time he moved to Sumter, it is equally well-settled, retains his domicile as of date of enlistment "unless he indicates an intent to abandon such original domicile and adopt a new one." Price v. Greenway (C.C.A.N.J. 1948), 167 F.2d 196, 199; Humphrey v. Fort Knox Transit Co. (D.C.Ky.1945), 58 F.Supp. 362, 364, aff. 6 Cir., 151 F.2d 602; Seegers v. Strzempek (D.C. Mich.1957), 149 F.Supp. 35, 36. The reason for this rule is that, "It is presumed that the serviceman has the intention to return to his home, unless the contrary is shown." Finger v. Masterson (D.C.S.C.1957), 152 F.Supp. 224, 225.

■ It is recognized in this case that the domicile of the plaintiff, at time of enlistment, was West Virginia. It is this domicile upon which he bases his allegation of diversity of citizenship. The defendant relies on the claim of a change of domicile by the plaintiff. Under such circumstances, the defendant bears the burden of proof, for, while the burden of proving diversity as a basis of federal

jurisdiction must be borne by the plaintiff, the admitted showing that plaintiff had a domicile at enlistment supporting federal jurisdiction, which domicile, it is presumed, did not change, imposed the burden of showing change of domicile on the defendant. Desmare v. United States (1876), 93 U.S. 605, 610, 23 L.Ed. 959; Sealey v. United States (D.C. Va.1934), 7 F.Supp. 434, 437; Humphrey v. Fort Knox Transit Co., supra, 58 F. Supp. at p. 364. And, to sustain such burden in the case of one in military or civilian government service, the showing "must ·be clear and unequivocal." Sweeney v. District of Columbia (1940), 72 App.D.C. 30, 113 F.2d 25, 31–33, 129 A.L.R. 1370, with note; Ex parte White (D.C.N.H.1915), 228 F. 88, 90; Kinsel v. Pickens (D.C.Tex.1938), 25 F.Supp. 455, 456 ("the intention to do so must be shown by the clearest and most unequivocal proof").

■ To establish such "clear and unequivocal" proof, the defendant relies on several circumstances. The defendant particularly stresses that shortly after transfer to Shaw Field the plaintiff moved his family "off-base" into a home he purchased through a V.A. loan. The establishment of a home "off-base" by a serviceman, without more, it has been held, is not sufficient, to evidence an intention to change domicile. Ex parte white, supra; Humphrey v. Fort Knox Transit Co., supra; Kinsel v. Pickens, supra.

In most of the cases in which this situation has arisen, the serviceman had rented, rather than bought the house "off-base" but it has become increasingly normal for persons, whether intending to remain for a limited period of time or permanently, to purchase their home, rather than to rent, if the purchase can be financed through a V.A. or similar type loan with monthly payments no more, and in some cases, less than the rent they might have to pay. The purchase under such circumstances represents what has often been described as "another way of paying rent." In this modern day, there is generally little difference between renting and purchasing, through one of the various types of government-guaranteed loans, a home; the cost is roughly the same in either case. It would seem that no greater significance, in an issue such as that here involved, should thus be given to a purchase than to a rental of a home, if, in either case, the cost is similar. Especially does this conclusion seem appropriate here, in view of the plaintiff's explanation of his purchase. Denying firmly that such purchase manifested an intention to change his domicile, the plaintiff explained in his deposition that his quarters on base were unsatisfactory and "it was cheaper to buy (a house through a V.A. loan) than to pay the rent on the base." This testimony that his monthly payments under his loan were less than the rent exacted for quarters on the base was not disputed. Such purchase, made as testified, would not necessarily establish a change of domicile; at best, it is merely a circumstance to be weighed with other circumstances in the case.

An excellent case in this connection is Gasque v. Gasque (1965), 246 S.C. 423, 143 S.E.2d 811. There, the plaintiff, engaged in government work, had lived in Washington for some 14 years, *owning his home there,* but claiming all the time his domicile in South Carolina. In sustaining domicile in South Carolina for the plaintiff, the Court said (246 S.C. p. 427, 143 S.E.2d p. 812):

"And it is generally held that temporary absence from one's domiciliary state solely because of government work or employment does not effect a change of domicile within the meaning of the divorce laws, in the absence of clear proof of an intent to abandon the old domicile and acquire a new one."

Deese v. Hundley (D.C.S.C.1964), 232 F.Supp. 848 and Ellis v. Southeast Construction Co. (C.C.A.Ark.1958), 260 F. 2d 280, are clearly distinguishable. In these cases, the serviceman had moved "off-base", renting in one case and purchasing in the other a home, but he had done so, in each case, *by his own testi-*

*mony,* for the purpose and with the intention of thereby establishing a change of domicile. The Court in both cases predicated its determination of a change of domicile primarily on the purpose to establish such new domicile as expressly professed and declared by the serviceman. In both cases, the Court gave effect to the serviceman's own declared intention to abandon his former domicile. In this case, on the contrary, the plaintiff positively and categorically disclaimed that his purchase of a home off-base was accompanied with the intention of changing his domicile.

The defendant, also, refers to the fact that, after his retirement, plaintiff discussed prospective employment in Sumter both as a civilian employee on the base and at the Exide plant and that his wife continued to be employed in a civilian capacity at the base. Plaintiff did telephone another retired serviceman about employment at the Exide plant, though he never filed any formal application and was never employed. He testified, too, that he inquired about "temporary work at the Base in the mess hall" but apparently the Base had no opening for a temporary employee. In both instances, the plaintiff emphasized that he sought only temporary work, repeating steadfastly his intention to return to West Virginia. Similarly, the plaintiff's wife contended her employment was clearly understood as temporary. She testified that "when the Nursery Director's job (at the Base) became available to me, I refused it because I thought we were going back (to West Virginia), and when I took it I told them it would be temporary because I didn't know when we would be leaving (Sumter)." It is difficult to find in this a "clear and unequivocal" intention to change domicile.

Shortly after the plaintiff was transferred to Shaw Field, he purchased an automobile. The automobile was registered for license with the South Carolina Highway Department and the plaintiff procured a South Carolina driver's license. The defendant urges that these circumstances indicate an intention on the part of the plaintiff to establish a South Carolina domicile. Such argument overlooks the fact that while these licensing statutes are made applicable to "residents of this State", that term, by statute, is defined to "include every person who moves temporarily or permanently into this State for the purpose of engaging in any business, profession or employment." Section 46–102, Code of Laws of South Carolina (1962). The procuring of such licenses would thus be required, whether plaintiff was or was not domiciled in South Carolina during his service at Shaw Field, and evidence of citizenship could with difficulty be deduced therefrom.

Finally, the defendant presses the point that the plaintiff did not, immediately after his retirement, return to West Virginia but remained in his home at Sumter. His retirement occurred shortly before the end of the school term and he testified he wished to permit his minor son to finish his school year. He contends that, after the close of the school year but before he could complete arrangements to return to West Virginia, this accident occurred. In the accident, his son apparently received serious injuries, requiring protracted medical attention. As the dependent of a retired serviceman, the son was entitled to receive, without cost, medical and hospital care at a military hospital. The plaintiff testified that there was no government hospital near his home in West Virginia, where his son could receive treatment. For this reason, he testified he had remained in Sumter near the Shaw Field hospital, though he added he wished to return to his home in West Virginia before the time expired for him to obtain government transportation to his home in West Virginia. This explanation is not without plausibility, especially when considered in connection with the other circumstances in the case.

Over against these facts cited by the defendants must be weighed other positive facts indicating an intention on the part of the plaintiff not to abandon his domicile in West Virginia. Especially

important in such evaluation is the testimony of the plaintiff and his wife. Indeed, in the *Ellis* case, supra, the Court of Appeals reversed the District Court largely because the latter Court had disregarded the testimony of the parties as to their intention. In this case, the plaintiff, as well as his wife, testified, without qualification, that he intended to retain his domicile in West Virginia. And this intention is reinforced by the many ties drawing him to his original home. Both he and his wife own property there. It is true that the wife's property is just over the line in Virginia but it is near the property of her husband. The husband owns an interest with his brother and two sisters in a home in West Virginia, which he declares his intention to occupy as his permanent home —just as soon as he can conveniently leave Sumter. The house is presently rented on "a month to month" basis but could easily be reclaimed by the plaintiff on short notice. The post-office address of this home in West Virginia is "Box 35, Bishop, Virginia." On plaintiff's military record, his home has continuously been designated as "Box 35, Bishop, Virginia." Whenever during his military service the plaintiff was transferred to a base where families were not permitted, his wife returned to their old home. The plaintiff's family and his wife's family live in or near their declared domicile in West Virginia. Strong family and property ties accordingly bind the plaintiff to his professed and declared domicile in West Virginia.

On the other hand, the plaintiff appears to have established few, if any, ties such as would indicate an intention to establish his domicile in Sumter. The plaintiff has never voted in South Carolina,[1] has never filed an income tax as a citizen of South Carolina,[2] belongs to no church in South Carolina, has affiliated with no social or fraternal groups or organizations in South Carolina, and has never worked in South Carolina, save as a member of the Air Force. In short, he has done little or nothing to indicate that he and his family have made themselves part of the Sumter community, manifesting any intent to abandon his former domicile and to establish a new one in Sumter.

Weighing all the facts herein, I conclude that the defendant has not established by "clear and unequivocal" evidence the intention on the part of the plaintiff to establish a new domicile in Sumter. The motion to dismiss is accordingly overruled.

And, it is so ordered.

---

1. He has, it is true, only voted once in West Virginia.

2. Plaintiff did not file an income tax return in West Virginia, but he explained that West Virginia did not have a personal income tax.