Alan McSURELY et al., Plaintiffs,

v.

Thomas B. RATLIFF et al., Defendants.

Civ. A. No. 1146.

United States District Court
E. D. Kentucky,
at Pikeville.

Oct. 18, 1967.

Dissenting Opinion Oct. 20, 1967.

William M. Kunstler, New York City, Morton Stavis, Newark, N. J., Dan Jack Combs, Combs & Anderson, Pikeville, Ky., for plaintiffs.

Thomas B. Ratliff, Herman Dotson, Marrs Allen May, Pikeville, Ky., Robert L. Matthews, Atty. Gen. of Kentucky, Frankfort, Ky., Edwin L. Weisl, Jr., Asst. Atty. Gen., Leslie A. Nicholson, Department of Justice, Washington, D. C., George I. Cline, U. S. Atty., Lexington, Ky., for defendants.

Robert A. Sedler, Lexington, Ky., amicus curiae.

Before COMBS, Circuit Judge, and MOYNAHAN, and GORDON, District Judges.

## OPINION

COMBS, Circuit Judge.

Kentucky's sedition law was passed in 1920 in the aftermath of World War I and the Bolshevik Revolution in Russia. The law was amended slightly in 1922, otherwise it has remained unchanged through the years. As would be expected, the statute is broad and comprehensive. It was good politics to be against Communism. The Governor signed the bill but was fearful that it drew too much water. He publicly stated that it "goes far afield and far beyond syndicalism and sedition." He thought the courts would "take out of this law the sections which make it dangerous", and concluded with this statement: "Those who seek its [government] overthrow by force or violence, or those who counsel resistance to its laws by unlawful means must be destroyed, but the right of free speech is the blood-bought heritage of every citizen: it is the palladium of our liberties, and it must and shall be preserved."

Now, for the first time a section of the law is squarely presented for judicial determination. KRS 432.040.[1] Also presented for determination is whether Congress by legislation has preempted this field so as to give federal courts exclusive jurisdiction; and, should this Court enjoin a state court from proceeding with a prosecution brought under the statute.

The individual plaintiffs, Alan McSurely, Margaret McSurely, Joseph Mulloy, Carl Braden, and Anne Braden, are under indictment in the Pike County, Kentucky, Circuit Court for advocating sedition and criminal syndicalism. The defendants are Robert Matthews, Attorney General of Kentucky; Thomas B.

[1]. KRS 432.040—Any person who by word or writing advocates, suggests or teaches the duty, necessity, propriety or expediency of criminal syndicalism or sedition, or who prints, publishes, edits, issues or knowingly circulates, sells, distributes, publicly displays or has in his possession for the purpose of publication or circulation any written or printed matter in any form advocating, suggesting or teaching criminal syndicalism or sedition, or who organizes or helps to organize, or becomes a member of or voluntarily assembles with any society or assemblage of persons that teaches, advocates or suggests the doctrine of criminal syndicalism or sedition shall be confined in the penitentiary for not more than twenty-one years, or fined not more than ten thousand dollars, or both.

Ratliff, Commonwealth's Attorney for the Pike County Circuit Court; Perry A. Justice, Sheriff of Pike County; and Grover Atkins, Jailer of Pike County.

Alan and Margaret McSurely, husband and wife, are field organizers for plaintiff Southern Conference Educational Fund, Inc., in Pike County, Kentucky. Alan McSurely is also a field organizer for the National Conference of New Politics and has distributed literature of Vietnam Summer, both unincorporated associations and both plaintiffs here. Joseph Mulloy is a field representative for the Appalachian Volunteers, an organization funded primarily by the United States Office of Economic Opportunity. According to the McSurelys and Mulloy, their official duties are to investigate the socio-eco-political milieu of Pike County, "to inform the people of their rights," and to help local citizens "organize to overcome their problems."

Anne and Carl Braden, husband and wife, are directors of the Southern Conference Educational Fund.

On the night of August 11, 1967, under authority of warrant charging seditious activities against the United States and the Commonwealth of Kentucky in violation of KRS 432.040, officials of Pike County and their deputies arrested the McSurelys and Mulloy. The officials also seized and impounded 564 loose books,[2] twenty-six posters, and twenty-two boxes of books, pamphlets, and other private and published documents found in the McSurely home. They also impounded a suitcase of clothes and several personal items which were caught up in the whirlwind of the search.

The McSurelys, together with Southern Conference Educational Fund and Vietnam Summer, filed their complaint in the United States District Court for the Eastern District of Kentucky. They alleged that KRS 432.040 is on its face unconstitutional and asked (1) that a three judge district court be convened;[3] (2) that defendants be enjoined from prosecuting the plaintiffs in the state court; (3) for an interlocutory injunction pending determination of the request for permanent relief; and (4) that the seized material be impounded by a federal marshal.

Judge Moynahan sustained the motion to certify for designation of a three judge district court. He denied the motion for interlocutory injunction and the motion to impound the seized material. Joseph Mulloy was permitted to intervene as a plaintiff.

After the hearing before Judge Moynahan, the warrants were amended so as to eliminate the charge of sedition against the United States.

This Court was convened on September 1, 1967. The Kentucky Civil Liberties Union was permitted to tender its motion to intervene as amicus curiae and to submit a brief. At the hearing on September 1, the parties agreed to a stipulation of facts, and the Court fixed time for making up the pleadings and for the filing of briefs. No temporary injunction was issued but the defendant Ratliff agreed in open court that he would not prosecute the criminal action in the Pike Circuit Court until final decision by this Court.

On September 8, the Attorney General of Kentucky filed his answer and motions. He moved that the action be dismissed for lack of jurisdiction and that, in the alternative, this Court stay its proceedings to await the exhaustion of state remedies. He also filed a general denial.

The news media continued to give the case wide publicity and spokesmen for both plaintiffs and defendants presented their arguments to the press and on national news programs.

On September 11, the Grand Jury of Pike County, acting under general instructions from the judge of that court, returned an indictment against the McSurelys, Mulloy, and Carl and Anne Braden, charging them with seditious ac-

---

2. Nearly all single copies except 290 copies of Matuson, FALSE WITNESS.

3. 28 U.S.C. §§ 2281–2284.

tivities against the Commonwealth of Kentucky and Pike County in violation of KRS 432.040. On the following day, the Bradens, who are residents of Louisville, Kentucky, made their appearance in Pike County and were arrested and placed in jail in default of bond. Plaintiffs then moved for an immediate hearing and renewed their motion for a temporary injunction. They also moved for a show cause order against the defendant Ratliff for contempt of court.

This Court held a second hearing on September 14, at which time the Bradens were allowed to intervene as plaintiffs. Testimony was given by the individual plaintiffs and by the defendant Ratliff. The testimony was to the effect that since the filing of the criminal prosecution against plaintiffs the people of Pike County are fearful of associating with them and it has become difficult for them to carry on their normal work; also that the publicity has jeopardized the position of the Appalachian Volunteers in obtaining funds from the Office of Economic Opportunity.

At the conclusion of the September 14 hearing we entered an order, Judge Moynahan dissenting, that KRS 432.040 is on its face unconstitutional; that the federal courts have exclusive jurisdiction of offenses of this nature; and that the Commonwealth of Kentucky and the Pike Circuit Court should be enjoined from proceeding further with the charges against the individual plaintiffs.

 The statute in question is clearly unconstitutional under even the most flexible yardstick. It is too broad and too vague. It contravenes the First Amendment to the Constitution of the United States because it unduly prohibits freedom of speech, freedom of the press, and the right of assembly. It fails to distinguish between the advocacy of ideas and the advocacy of action. It makes it a criminal offense merely to possess, with intent to circulate, literature on the subject of sedition. It imposes the penalty of imprisonment for advocating an unpopular political belief.

It would turn the courts into a forum for argument of political theories with imprisonment the penalty for the loser. It contains no requirement of criminal intent. The unwary and the ignorant could be enmeshed in the dragnet as easily as the covert plotter.

One of the definitions of sedition in the 1920 Act is, "the advocacy or suggestion by word, act, deed or writing * * * of the change or modification of the Government of the United States or of the Commonwealth of Kentucky, or of the Constitution or laws of either of them, * * * by means other than by lawful means * * *." Carroll's Kentucky Statutes, Baldwin's 1936 Revision. A person could thus be indicted for suggesting a change in the state or federal constitution "by means other than by lawful means." What is lawful would of necessity have to be decided by the presiding judge. This is a plain violation of the Sixth Amendment to the federal constitution which guarantees the right of the accused "to be informed of the nature and cause of the accusation." Under the Sixth Amendment a person cannot be charged merely with violating the law; the charge must be more specific.

For all these reasons KRS 432.040 violates basic constitutional guarantees which have been applied to the states through the Fourteenth Amendment for nearly half a century.

 We are of the opinion that, even if the statute were constitutional, Congress has preempted this field and the federal courts have exclusive jurisdiction. Commonwealth of Pennsylvania v. Nelson, 350 U.S. 497, 76 S.Ct. 477, 100 L.Ed. 640 (1956).

The criminal prosecution against these plaintiffs is pitched solely on the theory that they were engaged in a Communist conspiracy to overthrow the government of Kentucky and its subdivision, Pike County. This was made clear at the hearing on the motion for temporary injunction. There has been no suggestion of any other seditious activities. The case therefore falls squarely under

the Smith Act,[4] the Internal Security Act,[5] the Communist Control Act,[6] and other Congressional acts on the subject of Communism.

There is disagreement in this country about the dangers of Communism and how to combat those dangers. As regards Communism, most of us are like the blind men from Indostan who learned about the elephant by each touching a different part of its anatomy. We know very little about the subject as a whole. On one point, however, everybody agrees: Communism is not a local movement. The Communist Control Act of 1954 declares "that the Communist party of the United States * * * is in fact an instrumentality of a conspiracy to overthrow the Government of the United States. * * *" An attempt to overthrow the government of Kentucky or even one of its subdivisions would pose such a threat to the government of the United States that the Congressional acts referred to above would immediately become applicable. One of the absolutes in this country since the Civil War is that this is one nation indivisible. So goes the Pledge of Allegiance to the Flag recited by school children and by members of the Daughters of the American Revolution.

■ It is our view therefore that when a seditious activity is identified as a Communist conspiracy the Congressional acts on the subject require the invocation of the preemption doctrine, thus vesting exclusive jurisdiction in the federal courts. We do not think Uphaus v. Wyman, 360 U.S. 72, 79 S.Ct. 1040, 3 L. Ed.2d 1090 (1959), holds differently. There the question was whether a state had the right to make its own investigation of subversive activities. The investigations presumably encompassed all subversive activities, not merely those of Communists. Here the offense has been isolated and the alleged perpetrators charged as members of a Communist conspiracy. Moreover, we are here talking about a prosecution, not an investigation—a prosecution for a conspiracy which Congress has recognized as constituting a threat to the country as a whole. The state must therefore give priority to the federal government for the prosecution of the alleged offenses. The warrants in this case were amended and the charges of sedition against the United States were dropped in an apparent effort to give the state court jurisdiction. We think the amendment of the warrants and the limitation of the subsequent indictment was a futile gesture. Jurisdiction of the offenses here charged is in a federal court.

The next question is whether this Court should enjoin the state court from proceeding further with the prosecution of these plaintiffs. It seems to us that Dombrowski v. Pfister, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1964), is in point. The statute is an unduly broad and vague regulation of expression and enforcement of the statute would necessarily curtail activities which are privileged under the First Amendment.

■ It is difficult to believe that capable lawyers could seriously contend that this statute is constitutional. The indictment [7] follows the language of the statute and in our opinion fails to state an indictable offense. It too fails to make the distinction between advocacy of ideas and advocacy of action and is therefore insufficient. Dennis v. United States, 341 U.S. 494, 71 S.Ct. 857, 95 L. Ed. 1137 (1950); Noto v. United States, 367 U.S. 290, 81 S.Ct. 1517, 6 L.Ed.2d 836 (1960). In addition, the conclusion is inescapable that the criminal prosecutions were instituted, at least in part, in order to stop plaintiffs' organizing activities in Pike County. That effort has been successful. Not only has there been the "chilling effect" on freedom of speech

4. 18 U.S.C. § 2385.

5. 50 U.S.C. § 781 et seq.

6. 50 U.S.C. § 841 et seq.

7. Copy of indictment attached to this opinion as an appendix.

referred to in *Dombrowski,* there has been in fact a freezing effect. The Governor has issued a public statement that federal funds to the Appalachian Volunteers should be discontinued. Plaintiff's possessions have been seized and impounded and they have been placed in jail. The Bradens, who originally had not been charged with any offense, were indicted and placed in jail after they attempted to render assistance to the other plaintiffs. Clearly, the criminal prosecutions have put a damper on plaintiffs' freedom of speech, as well as on others who might be in sympathy with their objectives.

■ Defendants rely on 28 U.S.C. § 2283 [8] as a prohibition against this Court enjoining the state court from proceeding with the criminal prosecution. We do not consider § 2283 as a bar under the facts here shown. We are of the opinion that no proceeding was pending in the state court, within the meaning of § 2283, at the time this suit was filed. The McSurelys and Mulloy had been arrested and their possessions had been seized. Also, they had executed bond to be amenable to the orders of the Pike Circuit Court. But no indictment had been returned, and under Kentucky law an indictment is a prerequisite to prosecution for this type of offense. Constitution of Kentucky § 12; Eisner v. Commonwealth, Ky., 375 S.W.2d 825 (1964). If the grand jury had not subsequently returned an indictment, this controversy would have been relegated to the limbo of local history. The warrants served only to legalize the seizure of the material and to prevent the parties from fleeing the jurisdiction of the state court. In the interim, between the issuance of the warrants and the return of the indictment, there was a legal hiatus.

The argument of the defendants on this point could not in any event apply to the Bradens; no warrants were issued

prior to their indictment and the indictment was returned after this suit was filed.

Moreover, if we are right in our conclusion that the offenses with which these plaintiffs are charged fall within the purview of the Congressional enactments on the subject of Communism, then federal courts have exclusive jurisdiction and an injunction is necessary in aid of jurisdiction. Hines v. Davidowitz, 312 U.S. 52, 61 S.Ct. 399, 85 L. Ed. 581 (1941); Capital Service, Inc. v. National Labor Relations Board, 347 U. S. 501, 74 S.Ct. 699, 98 L.Ed. 887 (1954); American Ins. Co. v. Lester, 214 F.2d 578 (4th Cir. 1954).

■ Defendants rely also on the doctrine of abstention. They contend that plaintiffs can raise the question of unconstitutionality in the state court, with the right of appeal to the Kentucky Court of Appeals and then to the United States Supreme Court. We do not think this is adequate protection of plaintiffs' constitutional rights or the constitutional rights of others who would be affected by enforcement of this statute. The statute is so broad and sweeping that nothing short of rewriting it would bring it within permissible constitutional limits. It would be impossible to rehabilitate the statute in a single prosecution. A suit under the Kentucky declaratory judgment statute is not appropriate where proceedings involving the matter in issue are already pending. Gibbs v. Tyree, 287 Ky. 656, 154 S.W.2d 732 (1941); Schick v. Schick, Ky., 240 S.W. 2d 533 (1951); Pritchett v. Marshall, Ky., 375 S.W.2d 253 (1963). The indictment against plaintiffs certainly is pending even though it was returned after this case was filed.

Our attention has been called to a few Kentucky cases where the enforcement of a city ordinance has been enjoined by a state court. We do not consider those

---

8. 28 U.S.C. § 2283. A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or to effectuate its judgments.

cases applicable here. They rest on their own peculiar facts.

We recognize the importance of the abstention doctrine as between federal and state courts and are reluctant to issue an injunction in this case. It is our conclusion, however, that failure to do so will result in irreparable injury to these plaintiffs and the deprivation of basic constitutional rights of others who might be caught in this statutory dragnet.

The motion for a permanent injunction is sustained.

GORDON, District Judge, concurs.

MOYNAHAN, District Judge, dissents.

---

FORM 15A. INDICTMENT (RCr6.10

### PIKE CIRCUIT COURT

COMMONWEALTH OF KENTUCKY
vs.

Carl Braden
Anne Braden
Alan McSurely
Margaret McSurely
Joseph Mulloy

No. ————————

KRS ———— 432.040 ————

The grand jury charges:

On or about the 7 day of September 1967, And within 12 mo. before the Finding of this Indictment, in Pike County, Kentucky, the above named defendant (s) committed the offense of advocating, suggesting or teaching the duty, necessity, propriety or expediency of criminal syndicalism or sedition, or of printing, publishing, editing, issuing or knowing circulating, selling, or distributing, or having in their possession for the purpose of publication or circulation any written or printed matter in any form advocating, suggesting or teaching, criminal syndicalism or sedition, or of organizing or helping or organize, or becoming a member of or voluntarily assembling with any society or assemblage of persons that teaches, advocates, or suggests the doctrine of criminal syndicalism or sedition, committed in manner and form as follows, to-wit: The above named defendants, in Pike County and before the finding of this indictment did knowingly and feloniously, by word or writing, advocate or suggest the duty, necessity, propriety and expediency of physical violence, intimidation, terrorism or other unlawful acts or methods to accomplish a political and or to bring about political revolution, and did advocate or suggest by word, act or writing, public disorder, or resistance to, or the change or modification of the Government, Constitution, and laws of the Commonwealth of Kentucky or its political subdivisions, by force, violence or other unlawful means, and did knowingly circulate, sell, or distribute and did have in their possession for the purpose of publication or circulation, written or printed matter, advocating, suggesting and teaching criminal syndicalism, or sedition, or the change or modification of the Government of the Commonwealth of Kentucky or its political subdivisions by force or violence, or other unlawful means, and did become members of a society or assemblage, and did assemble with persons teaching, advocating or suggesting the doctrine of criminal syndicalism or sedition, or the overthrow change, or modification of the Government of the

Commonwealth of Kentucky by force, violence or other unlawful means against the peace and dignity of the Commonwealth.

A TRUE BILL

/s/ Monroe Deboard
Foreman

WITNESSES:
Perry A. Justice, Sheriff
Esta Conway, Pikeville, Ky.
James M. Compton, Yeager, Ky.
James Madison Compton, Yeager, Ky.
Kenneth Blake Holland, Lookout, Ky.
Charles Persinger, Hellier, Ky.
Gary Bickel, Briston, Tenn.
James B. Young, Whitesburg, Ky.
Milton Ogle, Bristol, Tenn.
Harry Eastburn, Paintsville, Ky.
Virgil Osborne, Virgie, Ky.
Foster Bentley, Rockhouse, Ky.
Fon M. Johnson, Robinson Creek, Ky.
Chester Reese, Regina, Ky.
William F. Pepper, New York, N. Y.
Dr. Robert Coles, Concord, Mass.
Nelson Radwan, Pikeville, Ky.

COPY

NO. 1174

COMMONWEALTH OF KENTUCKY
INDICTMENT FOR
Vs: Advocating Criminal
 Syndicalism or
 Sedition

Carl Braden, 3210 W. Broadway
 Louisville, Ky.
Anne Braden "
Alan McSurely, Pleasant Valley
 Pikeville, Ky.
Margaret McSurley "
Joseph Mulloy, Rt. 2, Pikeville, Ky.

A TRUE BILL

/s/ Monroe Deboard
 Foreman of Grand Jury

Presented by the foreman, in the presence of the Grand Jury, to the Court and filed in open Court, this 11 day of Sept 1967
/s/ Claude Reed Clerk,
 Pike Circuit Court
 By B. Justice D C

---

MOYNAHAN, District Judge.

I must respectfully dissent from the opinion rendered herein by my learned colleagues.

In this action the plaintiffs seek to have us declare K.R.S. 432.040 unconstitutional and to enjoin the defendants from prosecuting the plaintiffs, McSurely, and the intervening plaintiffs, Mulloy and Braden, for an alleged violation thereof.

It is undisputed that the McSurelys and Mulloy were under arrest charged with violation of said statute at the time this suit was filed, and the intervening plaintiffs, Braden, were indicted charged with such violation prior to their intervention herein.

28 U.S.C. § 2283 provides as follows:

"A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments."

The legislative history of this statutory provision and the cases decided thereunder clearly indicate the desire of the Congress to prevent unseemly confrontation between the State and Federal Courts. While plaintiffs contend

that this principle has been abrogated by Dombrowski et al. v. Pfister, etc., 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22, a careful reading of that case discloses that warrants issued in the lower Courts had been dismissed by a Magistrate at the time the suit was filed and there was therefore no state "proceeding" pending. Moreover in *Dombrowski* the Supreme Court said in footnote 2 at page 484, 85 S.Ct. at page 1119:

" * * * This statute (28 U.S.C. 2283) and its predecessors do not preclude injunctions against the institution of state court proceedings, *but only bar stays of suits already* instituted." (Emphasis added.)

Here the McSurelys and Mulloy had been arrested upon a warrant duly issued by the State Courts; they had executed bond and their case had been assigned for examining trial. In my opinion no exercise in semantics can alter the fact that there was a "proceeding" pending against them. A fortiori a "proceeding" was pending against the Bradens, since they were indicted by the Pike County Grand Jury prior to their intervention herein.

To grant injunctive relief herein is to extend *Dombrowski* beyond its facts and to totally ignore footnote 2 thereof (supra).

Nor may it reasonably be said that the injunctive process granted herein is "in aid of (the Court's) jurisdiction" since this argument could with equal vigor be applied to any case involving a constitutional attack upon a statute.

This case does not come within any of the three permissible exceptions to the statute (28 U.S.C. § 2283) and we are therefore prohibited by the express provisions thereof from enjoining the State Court proceeding.

Since in my opinion we have no power to enjoin the State Court, traditional principles of comity between the State and Federal Courts should dictate that we abstain from exercising jurisdiction herein.

In Douglas v. City of Jeannette, 319 U.S. 157, 63 S.Ct. 877, 87 L.Ed. 1324, the Supreme Court said:

"The power reserved to the states under the Constitution to provide for the determination of controversies in their courts may be restricted by federal district courts only in obedience to Congressional legislation in conformity to the Judiciary Article of the Constitution. Congress, by its legislation, has adopted the policy, with certain well defined statutory exceptions, of leaving generally to the state courts the trial of criminal cases arising under state laws, subject to review by this Court of any federal questions involved. Hence, courts of equity in the exercise of their discretionary power should conform to this policy by refusing to interfere with or embarrass threatened proceedings in state courts save in those exceptional cases which call for the interposition of a court of equity to prevent irreparable injury which is clear and imminent; and equitable remedies infringing this independence of the states—though they might otherwise be given—should be withheld if sought on slight or inconsequential grounds. It is a familiar rule that courts of equity do not ordinarily restrain criminal prosecutions. No person is immune from prosecution in good faith for his alleged criminal acts. Its imminence, even though alleged to be in violation of constitutional guaranties, is not a ground for equitable relief since the lawfulness or constitutionality of the statute or ordinance on which the prosecution is based may be determined as readily in the criminal case as in a suit for an injunction."

In Zwickler v. Koota, 261 F.Supp. 985 (decided subsequent to Dombrowski), a Three Judge District Court in the Eastern District of New York confronted with an issue very similar to that presented in the instant case said:

"The fact that a case is within the adjudicatory power of this court does not necessarily require that its power

be exercised. As a general rule and policy a district court, on its own motion, may, in its discretion, refuse to act. 'Especially should it do so where its powers are invoked to interfere by injunction with threatened criminal prosecutions in a state court.' "

The plaintiffs may raise in the Courts of Kentucky (i. e. the examining court, Circuit Court and Court of Appeals) the same identical challenge of unconstitutionality which they seek to invoke here. Any aggrieved party may appeal from the decision of the Court of Appeals of Kentucky to the Supreme Court of the United States, which is exactly the same remedy available here.

I am gravely concerned with the increasing tendency of the lower Federal Courts to interfere with the orderly processes of our sister State Courts without express mandate therefor from the Supreme Court.

I would therefore dismiss the Complaint and allow the case to proceed in the State Courts.