Joseph J. FERRARA, Jr., by his next friend, Joseph J. Ferrara, Plaintiff,

v.

John R. IBACH, Jr., Defendant.

Civ. A. No. 68–359.

United States District Court
D. South Carolina,
Columbia Division.

June 27, 1968.

## 1018

David W. Robinson, II, Columbia, S. C., for plaintiff.

Ronald Boston, Columbia, S. C., for defendant.

### ORDER

HEMPHILL, District Judge.

Defendant challenges the jurisdiction of the court for lack of required diversity of citizenship.[1] The complaint asks money damages for the minor plaintiff resulting from alleged malpractice of defendant. Both senior and junior Ferrara are residents of Pennsylvania. Decision rests on the citizenship-residence[2] of defendant. Before the court for consideration are the deposition of defendant and defendant's affidavit.

Defendant was born, raised and educated in New York. Upon graduation from medical school in 1959, he began internship and residency at Philadelphia, where he remained until 1964. At that time he moved to Media, Pennsylvania, a suburb of Philadelphia where he remained until he was drafted into the Army in July of 1967. For eight years he owned a home in Pennsylvania.

When he was drafted he reported to Fort Jackson, South Carolina. He sold his home in Pennsylvania and moved his family to Columbia, South Carolina, where they have since lived in a rented home. His family remained in South Carolina until he was ordered to Vietnam in May 1968. His family remains in Columbia where his oldest child is enrolled in the public schools, with plans to attend there during the 1968–69 session. He maintains bank accounts in South Carolina, and filed his latest tax returns in South Carolina. He performed off-duty work in a Columbia Hospital. One of his two cars is licensed in South Carolina, another in Pennsylvania.

On the other side of the coin it appears that he and his wife have a continuing registration to vote in Pennsylvania,[3] says he plans to vote there in November. He has continued membership in local medical societies in Pennsylvania. He is not licensed nor has he sought license to practice, or membership in medical associations in South Carolina. He and his family attend, but have not joined, a church in Columbia. He owns no property in South Carolina, does not plan to remain in South Carolina upon completion of his military obligation. He says in his affidavit that he has no "plans to change my permanent residence to any other state or place."

Other significant facts have their impact. In his affidavit defendant does not say he *is* a resident of Pennsylvania now, nor was at the time of commencement of the action. He testified he had planned, as early as late 1966 or early 1967, before called to duty, to go into the field of thoracic and cardio-vascular surgery which would require two years additional study to begin in July 1967, but military call postponed these plans. When he finished his tour of duty it was his plan to study at the University of Florida, had planned to go to Oteen, N. C., and London. After study he planned to affiliate with a medical school offering work in the new specialty field, *did not plan to return to Media, Pennsylvania.* He had applied for a license to practice in Florida.

■ The terms "domicile" and "citizenship" are synonomous and in order to acquire domicile the law requires the physical presence of a person at the place of domicile claimed, coupled with the intent of making it his present

---

1. 28 U.S.C. § 1332.

2. Or domicile.

3. He could not vote in South Carolina. 1962 S.C.Code Anno. Section 23–62(3) provides as qualifications for an elector: "Shall have been a resident in the State for two years, in the county for one year and in the polling precinct * * * four months * * *"

home. When these two factors occur the change in domicile is instantaneous. Morris v. Gilmer, 129 U.S. 315, 9 S.Ct. 289, 32 L.Ed. 690 (1889). Ordinarily, there must exist an intention to remain with no present intention of going elsewhere. Wright, Federal Courts (1963) §§ 26 and 31; Barron & Holtzoff, Federal Practice and Procedure (1960) § 26, n. 87.

▮▮▮ "It is settled that federal jurisdiction, under the diversity clause, rests on the domicile of the parties at the time of the commencement of the action and not on the place where they may at such time live or dwell temporarily." Miller v. Lee, 241 F.Supp. 19 (D.C.S.C.1965); Bowman v. DuBose, 267 F.Supp. 312 (D.C.S.C.1967). In the case of a serviceman, there is a presumption that he retains the domicile which he had at the time of being drafted and the evidence to sustain a change of domicile to the place where he may be stationed must be "clear and unequivocal." Bowman v. DuBose, supra. The intention must be shown by the clearest and most unequivocal proof. Sweeny v. District of Columbia, 72 App.D.C. 30, 113 F.2d 25 (1940). "There is a presumption in favor of an original or former domicile as against an acquired one; proof of a change of domicile must be clear and convincing * * *." Ellis v. Southeast Construction Company, 158 F.Supp. 798 (D.C.Ark.1958).

▮▮▮ The burden of proving diversity as a basis of federal jurisdiction must always be borne by plaintiff. Furthermore, since it is undisputable that defendant at the time of being drafted into the Army was domiciled in Pennsylvania, it is presumed that this domicile did not change, and the burden is therefore on plaintiff to establish a change of domicile, and to sustain this burden the showing must be "clear and unequivocal."

▮▮▮ The question of domicile is a mixed one of law and fact, with the factual elements predominating. As was

aptly stated in Ellis v. Southeast Construction Company, supra:

Since the acquisition of a domicile of choice involves the exercise of free will, and since members of the armed services are persons under authority, going where they are sent and abiding in a locality only for so long as their superiors permit them to remain, enlistment in (or being drafted into) one of such services does not ordinarily destroy a domicile of origin, nor in general does a serviceman acquire a new domicile in a state in which he may be stationed.

If this were the ordinary case of a medical doctor drafted into service and transferred to another state who planned to return home and resume his practice on completion of military duty, decision would be with defendant's position. However, the unusual circumstances place this case squarely within the exception to the normal serviceman rule, also recognized by the Court in *Bowman*.

A serviceman such as the plaintiff was at the time he moved to Sumter, it is equally well-settled, retains his domicile as of the date of enlistment 'unless he indicates an intent to abandon such original domicile and adopt a new one.' Bowman v. DuBose, 267 F. Supp. 312, 313 (D.S.C.1967).

Defendant has done about all that he could to establish a domicile in South Carolina. His family lives "off base" in a rented home under a written annual lease. They will remain in Columbia while he is overseas and his eldest child is enrolled in school in Columbia for the coming year.

▮▮▮ Having severed all connections with Pennsylvania, with no intention to return it would thus appear that the defendant is at present "homeless" unless he is now domiciled in South Carolina. The language of the Eighth Circuit Court of Appeals on this question is most appropriate.

It has been pointed out, however, that during a long period of military

service one may not be viewed as occupying, in a residential sense, 'no man's land.' The fact that one is on military duty does not preclude him from establishing his residence where he is stationed if the circumstances show an intent on his part to abandon his original domicile and adopt the new one. Ellis v. Southeast Construction Co., 260 F.2d 280, 282 (8th Cir. 1958).

 Paraphrasing the rule that domicile is dependent to a large extent on intention, "Home is where the heart is." The evidence is complete that defendant established his home in South Carolina. The combination of selling his Pennsylvania home, severing his Pennsylvania professional ties, moving his family to Columbia, enrolling his children in Columbia, paying his federal tax as a resident of the District of South Carolina, transferring bank accounts, etc. to South Carolina, the absence of any intention to return to Pennsylvania, all point, as spokes of a wheel to the center of his efforts, the fruits of his providing, and that is nothing more nor less than the establishment of a home in South Carolina. Again, it is significant that his affidavit of May 27, 1968[4] does not deny his domicile/residency in South Carolina, despite the opportunity of a purely *ex parte* declaration of intent. This court cannot allow this nebulous treatment of his residency at time of commencement of the action defeat jurisdiction in the light of other overwhelming indications that he moved "lock, stock and barrel" to Columbia, S. C. He abandoned the old, and established the new. The facts and the circumstances clearly reveal that intention on his part. His intention of going elsewhere was not a present intention, but of the future. Finally, this court can deduct that his personal and official mail, as well as that of his family, would first be sent to Columbia, S. C. At the time of the commencement of the action he had no other permanent address.

This decision is not in conflict with *Bowman*, supra, Miller v. Lee, D.C., 241 F.Supp. 19 (1965), or Deese v. Hundley, D.C., 232 F.Supp. 848 (1964). The critical facts are distinguishable.

Motion to dismiss denied. The court finds diversity of jurisdiction exists.

And it is so ordered.

---

4. Filed with the court June 14, 1968, when the motion was heard.