**Dale S. NESS, Plaintiff,**

**v.**

**DEAN WITTER REYNOLDS, INC., Johnny Ray Turbeville, and Robert H. Kremer, Defendants.**

**Civ. A. No. 3:87–1940–15.**

United States District Court, D. South Carolina, Columbia Division.

Nov. 24, 1987.

John L. Choate, Monteith P. Todd, Nelson, Mullins, Riley & Scarborough, Columbia, S.C., for plaintiff.

Daryl L. Williams, Sinkler & Boyd, P.A., Columbia, S.C., for defendants.

HAMILTON, District Judge.

This action, originally filed June 26, 1987 in the Court of Common Pleas for Richland County, South Carolina, was removed to this court on July 27, 1987, 28 U.S.C. § 1441, on the basis of diversity of citizenship, 28 U.S.C. § 1332, and federal question jurisdiction. 28 U.S.C. § 1331. This matter is presently before the court on plaintiff's motion for remand to state court. 28 U.S.C. § 1447. For the reasons set forth herein, the court finds that it lacks proper subject matter jurisdiction and that this case was removed improvidently. Accordingly, this action is remanded to state court pursuant to 28 U.S.C. § 1447(c).

### Background Facts and Procedural History

Plaintiff, Dale Ness, is a stockbroker and former employee of defendant Dean Witter Reynolds, Inc. (hereinafter Dean Witter). In September of 1986, plaintiff, a resident of Richland County, South Carolina, left Dean Witter to work with another securities firm in Columbia. Plaintiff's resignation from Dean Witter evidently caused bitter feelings between plaintiff and the manager of Dean Witter's Columbia office, Johnny Ray Turbeville, who allegedly warned plaintiff never to return to the office. On December 26, 1986, plaintiff entered Dean Witter's Columbia office allegedly to pick up copies of bonds owned by his father in Dean Witter's possession. Plaintiff alleges that Turbeville directed the Columbia city police to arrest plaintiff for trespass.

On June 26, 1987, plaintiff filed a complaint in state court that asserts causes of action for false arrest and imprisonment, intentional infliction of emotional distress,

negligence, defamation, and abuse of process, all of which arise out of his arrest for trespass. Plaintiff named three defendants: (1) Dean Witter, which is a Delaware corporation with its principal place of business in New York; (2) Turbeville, whose citizenship is in dispute and lies at the crux of the instant motion for remand; and (3) Robert H. Kremer, who was Turbeville's supervisor at the time of the incident and a citizen of Georgia.

In his complaint, plaintiff alleges that Turbeville was a citizen of South Carolina when this action was commenced. In their removal petition, however, defendants assert that Turbeville had moved to Arkansas and had become a citizen of that state when this action was begun. If Turbeville was, as plaintiff contends, a citizen of South Carolina when this action was instituted, there would not be complete diversity of citizenship between the parties since plaintiff and defendant Turbeville would both be citizens of the same state. 28 U.S.C. § 1332. Therefore, in order to sustain removal under 28 U.S.C. § 1441, defendants must establish either (1) that Turbeville was a citizen of Arkansas when this action was commenced or (2) the presence of a federal question. Notably, defendants, as the parties seeking to preserve removal, bear the burden of showing removal was proper. 14A Wright, Miller & Cooper, *Federal Practice and Procedure: Jurisdiction 2d* § 3739, at 574.

### Turbeville's Citizenship

The defendants supplemented their removal petition with Turbeville's affidavit, which sets out the following allegations concerning his citizenship: On June 6, 1987,[1] Turbeville and his wife decided to move to Little Rock, Arkansas, which was their original home. They stayed with his parents in Little Rock from June 5 until the weekend of June 13 and 14. On June 6, he and his wife made an offer to purchase a house in Little Rock. (They are renting that house now while they arrange financing.) On June 8, Turbeville made arrangements with the local Dean Witter office to transfer his employment from Columbia to Little Rock. On June 15, Turbeville informed the Columbia office of his decision to transfer to Little Rock. From June 15 until June 19, Turbeville worked between two and four hours a day at the Columbia office and wound up his affairs there by June 19. After that date, he only returned to the Columbia office to pick up his mail and personal effects.

Sometime after deciding to move to Arkansas, Turbeville placed his Columbia house on the market, and he closed the sale on June 26. On June 25 and 26, his furniture was loaded on a moving van for transport to Little Rock. Turbeville and his family did not sleep in their Columbia house after June 24. On Saturday, June 27, service of process was effected upon Turbeville by handing a copy of the Summons and Complaint to his wife at the friend's house where they were staying in Columbia, South Carolina.

In their memorandum in opposition to remand, defendants allege that by June 26, Turbeville had rented a house in Little Rock with "the term ... to begin on the date his furniture would be able to be moved in, the Monday [June 29] after he closed the sale of his South Carolina house. Between those dates his household furnishings were in a moving van, headed for Arkansas...." Defendant's memorandum in opposition to remand at 4.

In his affidavit, Turbeville concludes by saying that "[s]ince being there, I have obtained an Arkansas driver's license, registered to vote in Arkansas, titled my automobile in Arkansas, changed my bank accounts to an Arkansas institution, obtained a telephone number in Arkansas, and received my mail at an Arkansas address." Turbeville's affidavit signed July 24, 1987, at 2–3.

█ Diversity jurisdiction of federal courts extends to civil actions between "citizens of different states." 28 U.S.C. § 1332. According to the Supreme Court in *Williamson v. Osenton*, 232 U.S. 619, 34 S.Ct. 442, 58 L.Ed. 758 (1914), a party is a

---

**1.** For the sake of brevity, all events referred to hereinafter occurred in 1987.

citizen of the state in which he is domiciled. *See Ferrara v. Ibach*, 285 F.Supp. 1017, 1018 (D.S.C.1968). ("The terms 'domicile' and 'citizenship' are synonymous....."). The domicile of a party is determined as of the date the action is commenced. *Herriford v. American Motors Sales Corp.*, 471 F.Supp. 328, 334 (D.S.C.1979), appeal dismissed without opinion, 622 F.2d 584 (4th Cir.1980); *Miller v. Lee*, 241 F.Supp. 19 (D.S.C.1965); 1 J. Moore, W. Taggert & J. Wicker, *Moore's Federal Practice & Procedure*, ¶ 0.74[1], at 707.1–707.2 (hereinafter *Moore's* ). In order for a party to effect a change in domicile, he must (1) intend to establish a new domicile and (2) physically move there. *Rackley v. Board of Trustees of Orangeburg Reg. Hosp.*, 238 F.Supp. 512, 514 (D.S.C.1965); *Ferrara*, 285 F.Supp. at 1018–19; *Lew v. Moss*, 797 F.2d 747, 750 (9th Cir.1986); *see generally Moore's* ¶ 0.74[3.–1] (2d ed. 1986). "[P]roof of a change in domicile must be clear and convincing." *Ferrara*, 285 F.Supp. at 1019 (citing *Ellis v. South East Construction Co.*, 158 F.Supp. 798 (D.Ark.1958)); *see Maple Island Farm v. Bitterling*, 196 F.2d 55, 59 (8th Cir.1952), *cert. denied*, 344 U.S. 832, 73 S.Ct. 40, 97 L.Ed. 648 (1952); *Avins v. Hannum*, 497 F.Supp. 930, 936 (E.D.Pa. 1980). Furthermore, "[t]here is a presumption in favor of an original or former domicile as against an acquired one." *Ferrara*, 285 F.Supp. at 1019; *see McDougald v. Jenson*, 786 F.2d 1465, 1483 (11th Cir.1986), *cert. denied*, —— U.S. ——, 107 S.Ct. 207, 93 L.Ed.2d 137 (1986).

■ The instant action was commenced on Saturday, June 27, when the plaintiff effected service of process on Turbeville.[2] Plaintiff concedes that Turbeville formed the intent to establish Arkansas as his new domicile by June 27. *See* plaintiff's memorandum in support of remand at 7. The remaining question, however, is whether Turbeville also physically moved to Arkansas by June 27. Both parties, as well as the court, agree that the factual allegations

in this case present a close question. The court, however, finds that the allegations set forth in Turbeville's affidavit fail to rebut the presumption in favor of his former domicile, South Carolina.

Defendants concede that between June 26 and June 29, the Turbeville's household furnishings were "on their way" to Arkansas. Turbeville has not alleged that they were in Arkansas when this action was commenced on June 27. Defendants also concede that the earliest date Turbeville could have moved into his Arkansas house was Monday, June 29. Furthermore, Turbeville and his family were still in Columbia when he was served on June 27. These allegations contradict Turbeville's contention that he had physically moved to Arkansas by June 27. Moreover, Turbeville's earlier visits to Arkansas to establish business and social connections before transferring his family and personal belongings there do not constitute the physical move required by the majority of courts to effect a change in domicile. *See, e.g., Hendry v. Masonite Corp.*, 455 F.2d 955 (5th Cir.1972), *cert. denied*, 409 U.S. 1023, 93 S.Ct. 464, 34 L.Ed.2d 315 (1972); *see generally Moore's*, ¶ 0.74[3.–3], at n. 2.

South Carolina continued to be Turbeville's domicile until he established a new one. *McDougald*, 786 F.2d at 1483. Because the court finds that the facts, as alleged, fail to establish that Turbeville physically moved to Arkansas before this action was commenced on June 27, the court must also find that Turbeville did not succeed in changing his domicile to Arkansas by that date. *Rackley*, 238 F.Supp. at 514; *Ferrara*, 285 F.Supp. at 1018–19; *Lew*, 797 F.2d at 750. Consequently, this court finds that it lacks diversity jurisdiction under 28 U.S.C. § 1332.

### Federal Question Jurisdiction

■ The complaint in this action states causes of action for false arrest and impris-

---

2. Because this action was commenced in the state courts of South Carolina, the South Carolina Rules of Civil Procedure govern when this action was commenced. In contrast to Rule 3 of the Federal Rules of Civil Procedure, which provides that an action is commenced upon filing of the complaint, Rule 3(a) of the South Carolina Rules of Civil Procedure provides that "[a] civil action is commenced by filing and serving of a summons and complaint."

onment, intentional infliction of emotional distress, negligence, defamation, and abuse of process, none of which present a federal question. In their removal petition, however, defendants contend that "they are entitled to petition this court, pursuant to the Federal Arbitration Act, 9 U.S.C. § 4, for an order compelling arbitration of plaintiff's claims [3] and that, therefore, there is a federal question." Removal petition at 2. The Federal Arbitration Act, 9 U.S.C. § 1–14, however, clearly does not create any independent federal question jurisdiction under 28 U.S.C. § 1331.[4] *Moses H. Cone Memorial Hosp. v. Mercury Constr. Co.*, 460 U.S. 1, 26 n. 32, 103 S.Ct. 927, 942 n. 32, 74 L.Ed.2d 765 (1983). "Section 4 provides for an order compelling arbitration only when the federal district court would have jurisdiction over a suit on the underlying dispute; hence, there must be diversity of citizenship or some other independent basis for federal jurisdiction before the order can issue." *Id.*

The defendants, however, argue that even if the court has neither diversity nor federal question jurisdiction and remands this case to state court, it should still decide whether this action is arbitrable. In support of this request, defendants cite *Moses H. Cone* for the proposition that a party may, in some instances, seek an order compelling arbitration in federal court while the underlying action is pending in state court. Although this is correct, what defense counsel fails to appreciate is that this court must first have, as the court did in *Moses H. Cone*, an independent basis for federal jurisdiction before it may decide the arbitration issue. *Id.*

In *Moses H. Cone*, the state court action was not removable because a nondiverse defendant was included. When defendants later brought a separate federal action seeking arbitration of the plaintiff's state court claims, they dropped the nondiverse defendant to create complete diversity of citizenship. Unlike *Moses H. Cone*, the present action provides this court with no independent basis for federal jurisdiction, and thus no power, to decide the arbitration issue. *See Winston–Salem v. Chauffeurs Teamsters & Helpers Local Union No. 391*, 470 F.Supp. 442, 449 (M.D.N.C.1979).

Because diversity jurisdiction was not present at the time this action was commenced and because federal question jurisdiction is also not present, no basis for the removal of this action to federal court exists, and remand of this action to Richland County, South Carolina, Court of Common Pleas is required. 28 U.S.C. § 1447(c). Therefore, the court must decline to rule on defendants' pending motion to dismiss, to compel arbitration, to stay proceedings, and for protective order. Since the factual allegations regarding Turbeville's citizenship raised a close question, the court finds that it would be inappropriate to award plaintiffs costs for improvident removal. A certified copy of this order of remand shall be mailed by the clerk of this court to the clerk of the Court of Common Pleas for Richland County.

---

**3.** At the time of his employment with Dean Witter, plaintiff allegedly executed an agreement that compels him to arbitrate "any controversy" between him and "any member or member organization or affiliate or subsidiary" of the New York Stock Exchange "arising out of" his employment or termination of employment. Defendants contend that the present action arises out of plaintiff's employment with Dean Witter. *See* defendants' memorandum in support of its motion to dismiss, compel arbitration, to stay proceedings, and for protective order, at 3.

**4.** 9 U.S.C. § 4 reads, in pertinent part:

A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, *save for such agreement,* would have jurisdiction under Title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement.

(emphasis added).